UNITED STATES of America, Plaintiff-Appellee,

v.

Robert MILIET, Defendant-Appellant.

No. 86–3347
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Nov. 12, 1986.

Rehearing Denied Dec. 9, 1986.

Mark McTernan, New Orleans, La. (Court-appointed), for Miliet.

John Volz, U.S. Atty., Peter G. Strasser, Eddie Jordan, Asst. U.S. Attys., New Orleans, La., for U.S.

Before REAVLEY, JOHNSON, and DAVIS, Circuit Judges.

JOHNSON, Circuit Judge:

Appellant Robert Miliet appeals from his convictions for one count of conspiracy to distribute cocaine, 21 U.S.C. § 846, and two counts of distribution of cocaine, 21 U.S.C. § 841(a)(1). Finding Miliet's contentions to be without merit, we affirm the judgment of the district court.

I.

This case is the fruit of an undercover narcotics operation conducted by the Drug Enforcement Administration (DEA). On two occasions, July 17, 1985, and August 1, 1985, Agent Brian Dorian went to the home of Ann Lacombe and Mark Ostarly and purchased cocaine. DEA agents eventually arrested the defendant, Robert Miliet, and charged him with supplying the cocaine sold to Dorian.

Ann Lacombe testified for the prosecution at Miliet's trial. Lacombe admitted that she actually sold the cocaine to Dorian, but identified Miliet and a woman named Vivian Sylvestri as the suppliers of that cocaine. According to Lacombe, Miliet and Sylvestri brought the cocaine to Lacombe's home prior to the sales. They remained hidden in a back room of the home until the transactions were completed and Agent Dorian had gone.

Lacombe's testimony was corroborated by Agent David Peralta, who conducted a surveillance of Lacombe's residence. Peralta identified Miliet as having been present at Lacombe's home on both July 17 and August 1. Peralta saw Miliet leave the residence with a woman following the July 17 sale to Dorian. Peralta also saw Miliet enter Lacombe's residence prior to Dorian's arrival on August 1.

Lacombe's testimony was further corroborated by Agent Dorian. Dorian testified that after he paid Lacombe on July 17, she handed the money to Ostarly. He in turn took the money to the suppliers who were waiting in the back room. According to Dorian, Lacombe identified Miliet as one of the suppliers. However, when Dorian asked to meet Miliet, Lacombe indicated that Miliet was unwilling to be identified. Instead Dorian discussed future cocaine deals with Miliet through a closed door. Dorian also testified about inculpatory statements made by Miliet following his arrest on September 13, 1985.

Miliet testified briefly in his own defense. Miliet denied being present at Lacombe's home on August 1. Miliet admitted he was there on July 17, but denied any involvement in the cocaine transaction.

The jury rejected Miliet's testimony and found him guilty of one count of conspiring to distribute cocaine, 21 U.S.C. § 846, and

two counts of distributing cocaine, 21 U.S.C. § 841(a)(1). Miliet appeals raising a variety of challenges to his convictions.

## II.

■ Miliet first contends that the district court erred in admitting hearsay statements of co-conspirator Ann Lacombe under Fed.R.Evid. 801(d)(2)(E).[1] For extrajudicial co-conspirator statements to be admissible: (1) there must be a conspiracy; (2) the statement must be made during the course and in furtherance of the conspiracy; and (3) the declarant and the defendant must be members of the conspiracy. *United States v. James*, 590 F.2d 575, 578 (5th Cir.) (en banc), *cert. denied*, 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979). The trial court alone is to determine whether the statements were admissible. *Id.* at 579–80. The trial court's determination is reversible on appeal only if clearly erroneous. *United States v. Perry*, 624 F.2d 29, 30–31 (5th Cir.1980).

■ The "trial court's threshold determination of admissibility is normally to be made during the presentation of the government's case in chief and before the evidence is heard by the jury." *United States v. James*, 590 F.2d at 581. At this point in the trial, "as a preliminary matter, there must be *substantial independent* evidence of a conspiracy at least enough to take the question to the jury." *Id.* (emphasis in original) (citation omitted). At the conclusion of all the evidence, "on appropriate motion," the trial court must determine whether the prosecution has satisfied the requirements of admissibility by a preponderance of independent evidence. *Id.* at 582.

■ In the instant case, the district court made a threshold determination that Lacombe's extrajudicial statements were admissible after Miliet raised a hearsay objection during the testimony of the Government's fourth witness, DEA Agent Dorian. Record Vol. IV at 109–23. We conclude that this determination was not clearly erroneous. The testimony of the Government's initial witness, Agent Peralta, when coupled with that of Ann Lacombe provided the requisite "substantial independent" evidence that a conspiracy existed and that Miliet was a participant in the conspiracy. This testimony was clearly sufficient to meet the threshold requirement under *James*.

Miliet contends, however, that the district court failed to make a proper *James* determination because it refused to evaluate Lacombe's credibility. In support of this contention, Miliet points to the following remarks by the trial judge:

> I don't think I can replace the jury and say simply because Ann Lacombe has a history of disturbance and drug addiction, she is uncredible to the extent of saying that the Government shouldn't be permitted to examine the case agent with respect to statements made to him by any member of the alleged conspiracy. That is basically where we were. It seems to me that I am obliged, I believe, to permit the Government to go ahead with their interrogation of this witness who is presently on the stand along the lines that the U.S. Attorney has indicated, unless I felt the testimony of the previous witness, the young woman, who took the stand was so bizarre or so obviously incorrect or obviously tainted in such an extensive or extreme way as to not form the basis for the existence of the conspiracy that the Government says she testified about.

> . . . . .

> My appreciation of the law is the same as [that of Miliet's attorney] and I think they [the Government] have done that or at least they certainly are entitled to a presumption of having done that by what I perceive to be some pretty straightforward testimony of [Lacombe's] part.

---

**1.** This rule provides that a statement is not hearsay if "offered against a party and is ... a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Fed.R.Evid. 801(d)(2)(E).

Whether the jury chooses to believe it or not is up to the jury.

. . . . .

It seems to me that the Government, having shown the existence of the conspiracy through the testimony of a witness who the Court has to presume is credible at least to that extent, has a right to put questions to the case agent as to the testimony or statements, I should say, of other members of the alleged conspiracy and that is basically where the Government is and that is where I perceive they have a right to one.

Record Vol. IV at 119–23. Miliet argues that the court's remarks indicate its refusal to make the requisite *James* factual determination.

 We disagree. In response to Miliet's hearsay objection, the district court was required to make only a *threshold* admissibility determination. By indicating that the Government had produced sufficient independent evidence to create a jury question, the court made the requisite finding. No ultimate credibility conclusions were required at that point in the proceedings.[2] To the extent the court indicated that Lacombe's credibility was a question for the jury, the court was simply recognizing that the jury had the ultimate responsibility for determining appellants' guilt of the conspiracy count, the credibility of Lacombe, and the weight her testimony should receive. *See United States v. Marbury,* 732 F.2d 390, 402 (5th Cir.1984); *see also United States v. Whaley,* 781 F.2d 417, 422 (5th Cir.1986).

### III.

Miliet next contends that the Government's cross-examination of John Wright,

Miliet's co-defendant, violated the Confrontation Clause of the Sixth Amendment. During that cross-examination, Wright testified that he overheard Mark Ostarly, a nontestifying co-conspirator, tell Agent Dorian that Miliet supplied the cocaine sold to Dorian. The trial judge immediately sustained a hearsay objection to Wright's testimony. Nevertheless, Miliet argues that by soliciting Ostarly's hearsay statement, the Government violated the Sixth Amendment as interpreted in *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), entitling Miliet to a new trial.

In response, the Government argues that *Bruton* is inapplicable in the instant case. According to the Government, Ostarly's statement was made during the course and in furtherance of a conspiracy and thus was not hearsay under Fed.R.Evid. 801(d)(2)(E). The Government asserts that a co-conspirator statement admissible under Rule 801(d)(2)(E) necessarily satisfies the requirements imposed by the Confrontation Clause.

Whether the Government's assertion is correct is an open question in this Circuit. A split of opinion exists among those federal circuits to have considered the issue. *Compare United States v. DeLuna,* 763 F.2d 897, 909 (8th Cir.), *cert. denied,* ——, U.S. ——, 106 S.Ct. 382, 88 L.Ed.2d 336 (1985) (even if a co-conspirator statement is admissible under Rule 801(d)(2)(E), Government must independently satisfy Confrontation Clause), *with United States v. Chiavola,* 744 F.2d 1271, 1276 (7th Cir.1984) (Confrontation Clause presents no bar to the use of extrajudicial co-conspirator statements admissible under Rule 801(d)(2)(E) ).

 The instant case, however, does not

---

**2.** On appropriate motion and at the conclusion of evidence, the trial court must determine whether the prosecution has satisfied the requirements of admissibility by a preponderance of independent evidence. Only at this point is the trial judge compelled to consider all independent evidence, weigh it, make credibility choices, and determine whether it preponder-

ates in favor of finding that rule 801(d)(2)(E) has been satisfied. *United States v. James,* 590 F.2d at 589 (Tjoflat, J., specially concurring); *cf. United States v. Perry,* 624 F.2d 29, 30–31 (5th Cir.1980) (qualitative and quantitative evaluation required); *United States v. Nichols,* 695 F.2d 86, 91 (5th Cir.1982) (judging the credibility of witnesses is a matter for the trial court).

require this Court to reach the question.[3] Even if the Government committed error in soliciting testimony referring to Ostarly's hearsay statement, that error does not entitle Miliet to a new trial. The hearsay statement suggesting that Miliet supplied the cocaine sold to Agent Dorian was merely cumulative of other evidence. *See United States v. Means*, 695 F.2d 811, 818 (5th Cir.1983). Several witnesses identified Miliet as having supplied the cocaine. Moreover, the district court ruled that the testimony was inadmissible hearsay and instructed the jury not to consider hearsay. Reading the record as a whole, we conclude that the Government's error, if any, was harmless beyond any reasonable doubt.

### IV.

Following his arrest, Miliet asked Agent Dorian the meaning of "conspiracy." Dorian responded by providing an example of a conspiracy. Dorian told Miliet that a conspiracy exists where there are two people, one being a passenger who intends to carry out a drug transaction, and the other being a driver who transports the passenger to the site of the transaction and acts as security once the transaction takes place. After Dorian completed his explanation, Miliet stated: "You might have me on conspiracy; I never put no coke in no hands. You got me on conspiracy."

At trial, Miliet attempted to challenge this inculpatory statement as unreliable. According to Miliet, at the time of the statement he misunderstood "conspiracy" to include mere presence at the scene of a crime. During cross-examination of Agent Dorian, Miliet's attorney attempted to establish that Dorian had misled Miliet regarding the meaning of conspiracy. The following colloquy occurred:

Q: When you gave him the lay definition [of conspiracy], first of all, you're not a lawyer, is that correct?

A: That's correct.

Q: Certainly not a Judge?

A: No.

Q: Ever been to law school?

A: No, I have not.

Q: When you gave him your personal definition of what is conspiracy, did you happen to tell him mere presence on the scene of a crime without any other involvement does not constitute involving a conspiracy?

A: No, I just gave him my basic definition of what I thought conspiracy was.

Q: Did you tell him persons can be present on the scene of a crime and even have knowledge of the fact that the crime may be taking place but not be members of the conspiracy?

At this point, the trial judge intervened and cut off any further questioning regarding information Dorian had failed to provide to Miliet.

Relying on *Crane v. Kentucky*, —— U.S. ——, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986), Miliet contends that the district court's action deprived him of a fair trial. In *Crane*, the petitioner was convicted of murder based primarily on a confession. Prior to trial the petitioner had unsuccessfully sought to suppress the confession as involuntary. Despite his unsuccessful motion to suppress, the petitioner attempted to challenge the confession at trial as unworthy of belief. To do so, petitioner attempted to introduce evidence regarding the circumstances surrounding the confession. The trial court refused to allow petitioner to introduce such evidence apparently on the ground that the evidence bore only on the voluntariness of the confession, a legal matter that had already been resolved during the suppression hearing. The Supreme Court reversed Crane's conviction, concluding that "the Kentucky courts erred in foreclosing petitioner's efforts to introduce

---

**3.** We note in this regard that the Government has not established that Ostarly's hearsay statement was made in furtherance of the conspiracy as required by Rule 801(d)(2)(E). The record is entirely ambiguous on this point and the district court ruled that the statement was inadmissible hearsay.

testimony about the environment in which the police secured his confession.... evidence about the manner in which a confession was obtained is often highly relevant to its reliability and credibility." *Id.* at 2147. The Court concluded that the trial court's error was so grave that it deprived petitioner of a fair trial by preventing any meaningful opportunity to present a complete defense. *Id.*

Two factors were critical to the Court's determination in *Crane.* First, the excluded evidence was all but indispensable to the petitioner's principal theory of defense. Second, the trial court failed to advance any rational justification for its wholesale exclusion of potentially exculpatory evidence.

■ Neither of these factors is present in the instant case. Miliet presented considerable evidence challenging the reliability of his confession. Miliet and Agent Dorian each testified regarding the circumstances surrounding Miliet's inculpatory statement. Miliet specifically testified about his misconception of "conspiracy." On cross-examination of Dorian, Miliet's attorney was given an opportunity to explore the possibility that Dorian misled Miliet. Only after the attorney's second question directed at uncovering information Dorian failed to include in his description of conspiracy did the trial court cut off this line of questioning. In doing so, the trial court expressed its legitimate concern that the questioning might confuse the jury regarding the correct definition of conspiracy.

In these circumstances, we cannot conclude that the trial court's action deprived Miliet of "a meaningful opportunity to present a complete defense." There was, therefore, no violation of Miliet's constitutional right to a fair trial.

## V.

Miliet's final contention is that the district court erred in denying his motion for a new trial. According to Miliet, newly discovered evidence obtained from Vivian Sylvestri, Mark Ostarly and Dennis Martinez indicates that Martinez, not Miliet, was present during the August 1, 1985, transaction. Miliet argues that this newly discovered evidence undermines the validity of his convictions.

■ A motion for a new trial based on newly discovered evidence is addressed to the sound discretion of the trial court. A district court decision denying such a motion is reversible only if defendant establishes "that the ruling is so clearly erroneous as to amount to an abuse of that discretion." *United States v. Mesa,* 660 F.2d 1070, 1077 (5th Cir.1981). Five elements must be present to justify such extraordinary relief: (1) The evidence must be discovered following trial, (2) The movant must show due diligence to discover the evidence, (3) The evidence must not be merely cumulative or impeaching, (4) The evidence must be material to the issues before the court, and (5) The evidence must be of such a nature that a new trial would probably produce a new result. *United States v. Fowler,* 735 F.2d 823, 830 (5th Cir.1984).

■ The district court in the instant case could properly conclude that Miliet had failed to show due diligence in discovering the evidence. Miliet suggested at trial that it was actually Dennis Martinez who was involved in the August 1, 1985, transaction. Miliet knew that Sylvestri and Ostarly were both present at the August 1 sale and that either might corroborate his story. Miliet also knew about Martinez. He nevertheless failed to call any of these three witnesses at trial or adequately explain his failure to do so. We conclude therefore that the district court did not abuse its discretion in denying Miliet's motion for a new trial.[4]

---

**4.** Miliet's remaining claim that the district court erred in denying his motion to suppress various inculpatory statements requires little discussion. Miliet claims that the statements were a product of improper official threats against his mother's job security. DEA agents, however, denied making any such threats. The district court could properly resolve this conflicting testimony in favor of the agents.

## VI.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.