**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Hector Leonel RODRIGUEZ–MIRELES, Defendant–Appellant.**

**No. 88–2997**
**Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

March 6, 1990.

J.R. "Bobby" Flores, McAllen, Tex., for defendant-appellant.

Henry K. Oncken, U.S. Atty., Paula C. Offenhauser, Kathlyn G. Snyder, Asst. U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before GEE, DAVIS, and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Hector Leonel Rodriguez–Mireles (Rodriguez) appeals his convictions for: (1) conspiracy to import 447 pounds of marijuana into the United States; (2) importing marijuana into the United States from Mexico; (3) conspiracy to possess with intent to distribute; and (4) possession with intent to distribute. For these offenses, he was sentenced to 70 months imprisonment, together with supervised release and a special assessment. He argues that the entirely circumstantial evidence offered by the government was insufficient to sustain his convictions. We reject his contentions and affirm.

On April 26, 1988, United States Border Patrol Agent George Taylor was patrolling the border area near La Joya, Texas—an area known to be active in the smuggling of aliens and narcotics. At approximately 10:30 p.m., several sensors went off in the Rio Grande River.

By midnight, Agent Taylor called for three other officers to assist him. Taylor, an experienced tracker, and Agent Halverson followed the fresh tracks of nine individuals from the river bank, through open fields, to a stopping place. From this point, only one of the nine sets of footprints continued north—tracks made by the only pair of tennis shoes in the group, Taylor testified. These tracks led to an outhouse located in a residential yard. The tracks went back and forth from the outhouse to the stopping point numerous times. The trail of the rest of the group, not including the tennis shoe tracks, went back to the river bank. At several places along the journey from the river to the outhouse, the officers detected the strong odor of marijuana.

The officers set up surveillance near the outhouse, and while they were watching, a man and woman drove up to the residence. The couple went inside after the man first looked all around. About ten minutes later, the officers saw Rodriguez appear from the side of the house, look around, remove his tennis shoes, climb on top of a picnic table within a few yards of the outhouse, and go to sleep.

Soon after, the officers peeked through the cracked door of the outhouse and found the marijuana, which they had earlier detected by its scent. The officers woke Rodriguez, who admitted that he was an alien who had come across the river that day.

After his arrest, Rodriguez stated that the marijuana was not his, and if the officers wanted information, they should "talk to the people ... in the house." Four hundred forty-seven pounds of marijuana were seized from the outhouse. The drug was bagged in sacks that said "sugar" in Spanish.

As a reviewing court, we must examine the evidence in the light most favorable to the verdict. *United States v. Ayala*, 887 F.2d 62, 67 (5th Cir.1989). The verdict will be affirmed "if a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *Id.*, citing *U.S. v. Palella*, 846 F.2d 977, 981 (5th Cir.), cert. denied, —— U.S. ——, 109 S.Ct. 162, 102 L.Ed.2d 133 (1988). It is well-settled that drug conspiracies may be established by circumstantial evidence. *See U.S. v. Ayala*, 887 F.2d at 67. As the Supreme Court long ago observed, "[c]ircumstances altogether inconclusive, if separately considered, may, by their number and joint operation, especially when corroborated by moral coincidences, be sufficient to constitute conclusive proof." *Coggeshall v. United States (The Slavers)*, 69 U.S. (2 Wall.) 383, 17 L.Ed. 911, 914–15 (1865).

■ Rodriguez initially complains that there was insufficient evidence of his involvement in a conspiracy to either import or possess the marijuana with intent to distribute. The elements of a drug conspiracy are: (1) the existence of an agreement to import or to possess with intent to distribute; (2) knowledge of the agreement; and (3) voluntary participation in the agreement. *U.S. v. Gonzales*, 866 F.2d 781 (5th Cir.) *cert. denied*, —— U.S. ——, 109 S.Ct. 2438, 104 L.Ed.2d 994 (1989). The evidence in this case, admittedly of an unusual nature, was nevertheless sufficient to permit the jury to infer the existence of both charged conspiracies.

■ As to the existence of an agreement, the officers discovered the footprints of a group of individuals leading from the Rio Grande river bank to stopping points en route to the yard where the marijuana was found. They testified that the tracks indicated that the individuals were carrying heavy loads. Also, according to the agents, the strong odor of marijuana permeated the night air along and around the path of the tracks. Other individuals who arrived at the residence behaved suspiciously. The officers discovered a large amount of marijuana, corroborating their belief that a number of people had been involved in its transportation. In light of all this, it was reasonable for the jurors to conclude that the charged drug conspiracies existed.

It is necessary to interject here that although there is no eyewitness testimony proving that a group of individuals transported marijuana to the outhouse that night or that Rodriguez was with such a group, the agents' testimony was clear and consistent about their tracking methods and the reliability of their conclusions. The path followed by the group of people, they said, could be readily followed because it was a moist, foggy evening, so that footprint evidence was aided by that of dew and droplets remaining on recently crushed twigs. Where the group had stopped to rest, they left fresh cigarette butts and gum wrappers, and there were ashes on the cigarettes. That the group was heavily burdened was proved by the depth of indentations in the soil, the tendency of the hikers to climb sideways up and to slide down embankments. Cross-examination was ineffective to cast any serious doubt on the officers' certainty that the group they followed had indeed transported heavy loads from the river to the stopping points and thence to the outhouse.

■ Next we review whether Rodriguez knew and voluntarily participated in the drug conspiracies. Officer Taylor testified that Rodriguez's tennis shoes made the tracks to the outhouse from the stopping place. The jury had before them Rodriguez's shoes and a photograph of the footprint taken at the scene. Rodriguez argued that there was nothing uncommon about his tennis shoes, but Taylor testified that there was only one set of tennis shoe tracks among the group of prints, and these were the prints leading back and

forth from the stopping place to the outhouse. According to the officers, the impress of·the tennis shoes was visible, if not continuously, then at numerous points along the path to the outhouse and in front of it.

Besides the footprint evidence, Rodriguez was found sleeping near the place where the drugs were kept. Although we agree with Rodriguez that mere presence alone is insufficient evidence of knowledge or participation in a conspiracy, *United States v. Aguiar,* 610 F.2d 1296, 1304 (5th Cir.) *cert. denied,* 449 U.S. 827, 101 S.Ct. 91, 66 L.Ed.2d 31 (1980), when his presence near the drug is considered along with the other evidence derived from the tracking, a rational juror could have found Rodriguez to be a knowing, voluntary participant in the conspiracies.

■ Rodriguez also contends that the evidence did not prove his guilt for possession with intent to distribute or for importation. "A possession conviction requires proof that a defendant had knowing possession of marijuana with the intent to distribute it." *U.S. v. Hernandez–Palacios,* 838 F.2d 1346, 1349 (5th Cir.1988). The same elements may prove an importation conviction, along with "proof that the defendant played a role in bringing the marijuana from a foreign country into the United States." *Id.* We hold that the evidence outlined above was adequate to convince a rational juror beyond a reasonable doubt that Rodriguez knowingly possessed the marijuana, intended to distribute it, and illegally imported it into the United States from Mexico. Therefore, these convictions, as well as the ones for conspiracy, are AFFIRMED.