UNITED STATES of America,
Plaintiff–Appellee,

v.

Eugenio ALVARADO, Oscar Abelenda and Roniel Marcos Medina,
Defendants–Appellants.

No. 89–3163.

United States Court of Appeals,
Fifth Circuit.

April 6, 1990.

988

Bruce C. Ashley, II, New Orleans, La., for Abelenda & Alvarado.

Archie B. Creech, New Orleans, La., for Medina.

Lawrence Benson, Robert J. Boitmann, John P. Volz, U.S. Atty., New Orleans, La., for United States.

Before WISDOM, POLITZ and JOHNSON, Circuit Judges.

JOHNSON, Circuit Judge:

Eugenio Alvarado, Oscar Abelenda and Roniel Marcos Medina were convicted of conspiring to possess cocaine as well as the substantive offense of possession of co-, caine. Each challenges the sufficiency of the evidence to support the convictions. Additionally, Medina challenges the district court's denial of a motion for new trial. Alvarado and Medina challenge the district court's application of the Sentencing Guidelines. Abelenda also challenges the district court's finding that he consented to the

search of his automobile which led to the discovery of evidence used against him at trial. Finding no error, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

The facts testified to at trial relate the following sequence of events. In April of 1988, Special Agent Stephen Luzinski of the Drug Enforcement Administration, acting undercover, was introduced to appellant Alvarado, who offered to supply large quantities of cocaine to Luzinski. Luzinski met with Alvarado at various locations in New Orleans, Louisiana, Mobile, Alabama, and Miami, Florida, during the months of May, June and July in order to discuss the purchase of cocaine. On July 29, Alvarado told Luzinski that the cocaine was on its way.

On that day, while under DEA surveillance, Alvarado rented a room at a motel in Kenner, Louisiana. At 12:15 a.m. on July 30, agents observing the motel saw Abelenda arrive at the motel in a maroon Ford Thunderbird with Texas license number 905TAN. Abelenda, carrying a small package, entered the building and hallway where Alvarado's room was located. Just after the surveillance team called Luzinski to tell him of Abelenda's arrival, Alvarado called Luzinski to tell him that the cocaine had arrived. The next day, DEA agents observed Abelenda looking out of Alvarado's motel room window.

On August 1, 1988, Luzinski, using bills with previously recorded serial numbers, purchased one kilogram of cocaine from Alvarado. The cocaine was delivered by Robert Olson. Alvarado then invited Luzinski to accompany him while he gave the money to the person who had brought the cocaine. The two went in separate cars to a restaurant where they met Abelenda. After dinner, Alvarado gave Abelenda the money. With Alvarado and Luzinski in one car and Abelenda following in another, the three men went downtown to find a hotel room for Abelenda. As they drove downtown, Alvarado explained that Abelenda, referred to as "the Old Man," had brought the cocaine.

The next day, the three met and discussed the previous day's transaction. During the course of the conversation, Alvarado told Luzinski that Abelenda was waiting for a boat with cocaine on it and that the people bringing the cocaine would be contacting Abelenda through Alvarado's beeper.

On August 9, the men again met. Alvarado told Luzinski that the deal with the cocaine on the boat was off, but said that Abelenda would be returning to Houston, Texas, where he could get amounts of cocaine up to fifty kilograms. Luzinski expressed an interest in buying between thirty and fifty kilograms. The men proceeded to a restaurant where they began to hammer out the logistics of a large cocaine deal. Alvarado, saying he had business to attend to, finally excused himself. Luzinski and Abelenda remained behind until Luzinski later drove Abelenda to a hotel room where Abelenda checked in for the night. At trial, Luzinski stated that he had no trouble communicating with Abelenda in English.

The next day, August 10, DEA surveillance observed Abelenda leave New Orleans in the car in which he had arrived. The DEA contacted the Louisiana State Police and requested assistance so that the DEA investigation would not be exposed. Trooper Scott Havens stopped Abelenda, who had been travelling at 73 miles per hour in a 65 mile per hour zone, for speeding. Because Havens had been informed that Abelenda was believed to be in possession of $23,000 that DEA had paid for narcotics, Havens requested that Abelenda consent to a search of the vehicle. Abelenda stated that the car was not his, but belonged to a friend. Abelenda did, however, sign a written consent to search form which Havens read to him in English. Havens testified that he talked with Abelenda for approximately twenty minutes and that the two men had no trouble communicating.

Nothing was discovered in the passenger compartment. Havens then asked for the keys to the trunk. In the trunk, Havens found a plastic bag containing a large

amount of cash. Upon inquiry, Abelenda said that the money was his and that he had won it on bets that he made on a Saints–Vikings game. Havens contacted Sergeant Robert Maddlozzo of the Louisiana State Police.

Maddlozzo arrived and took possession of the cash which was in a bag marked "Room 803," the number of Abelenda's first hotel room. Maddlozzo counted the money, which totalled $55,900, $11,800 of which had serial numbers matching the money Luzinski had used to pay Alvarado. Abelenda was released, but the money was confiscated.

On August 24, Luzinski met with Alvarado to discuss another purchase of cocaine which Alvarado indicated would be supplied by Abelenda. Although this deal fell through, on September 27, Alvarado informed Luzinski that he had four kilograms of cocaine available. Luzinski agreed to try and line up buyers. Three days later, Alvarado introduced Luzinski to Robert Terrell. Terrell was introduced as Alvarado's partner.

On October 9, 1988, Alvarado told Luzinski that two men were going to bring up two or three kilograms of cocaine from Miami. Luzinski expressed an interest in buying the cocaine. On October 11, Alvarado told Luzinski that the cocaine had arrived. They made plans to consummate the deal the next morning.

The next morning, DEA agents observed Alvarado, appellant Medina and Jorge de Miranda, who was acquitted at trial, walk into a New Orleans motel and exit five minutes later. The agents followed the men as they drove in two separate cars to Terrell's office-garage. Using a cellular phone, Alvarado called Luzinski and told Luzinski to meet him at the office-garage. Upon Luzinski's arrival, Alvarado let him in and told him that the other two men were in the garage removing the cocaine from their car. At approximately the same time, Terrell, who testified as a Government witness, saw Medina remove the backseat of the car while de Miranda held a light for him. De Miranda then brought a package to Alvarado, who then entered the

garage and returned to the office section with more packages. Testing later confirmed that the packages contained cocaine.

Upon Luzinski's signal for arrest, DEA agents moved in and placed Alvarado, Medina and de Miranda under arrest. At this time, Medina's wallet was seized. The wallet contained a paper on which Alvarado's nickname and pager number were written as well as the telephone number at the office-garage.

The men were charged with violations of 21 U.S.C. §§ 841(a)(1) and 846. Alvarado and Abelenda were tried and convicted of conspiring to distribute in excess of a kilogram of cocaine (Count 1) and of possessing with intent to distribute approximately a kilogram of cocaine (Count 2). Alvarado was also convicted, along with Medina, of conspiring to possess with intent to distribute approximately three kilograms of cocaine (Count 3), and of possessing with intent to distribute three kilograms of cocaine (Count 4).

Prior to trial, Abelenda moved to suppress the money seized from the trunk of his car. The district court, finding that Abelenda had been validly stopped for speeding and had voluntarily consented to the search, denied the motion.

Alvarado was sentenced to a term of 188 months on each of the four counts, with the sentences to run concurrently. Additionally, he was sentenced to serve five years of supervised release commencing on his release from prison. In sentencing Alvarado, the court found that he was an organizer or leader in the conspiracies.

Abelenda was sentenced to ninety-seven months' imprisonment on each of the two counts on which he was convicted, with the sentences to run concurrently. He was also sentenced to serve a five year period of supervised release, commencing on his release from prison. The court also found that Abelenda was a leader or manager in the conspiracy.

Medina was sentenced to be imprisoned for sixty-three months on each of the two counts on which he was convicted, with the sentences to run concurrently. Medina

was also sentenced to serve a five year period of supervised release.

All three timely appealed to this Court. We address each asserted ground for relief in turn.

## II. DISCUSSION

### Consent to Search

■ Prior to trial, Abelenda filed a Motion to Suppress the cash discovered in the trunk of his automobile on the grounds that he had not validly consented to the search of the car. As Abelenda correctly points out, in order to be valid, consent to search must be voluntary. Voluntary consent requires "an intellectual understanding of exactly what is being requested and a voluntary acquiescence in light of that understanding." *United States v. D'Allerman*, 712 F.2d 100, 104 (5th Cir.), *cert. denied*, 464 U.S. 899, 104 S.Ct. 254, 78 L.Ed.2d 240 (1983). Whether consent was given is a "determination to be made from the totality of the circumstances." *United States v. Gomez–Diaz*, 712 F.2d 949 (5th Cir.1983), *cert. denied*, 464 U.S. 1051, 104 S.Ct. 731, 79 L.Ed.2d 191 (1984).

The district court, in denying Abelenda's motion to suppress the cash found in the trunk of his car, found that Abelenda was sufficiently fluent in English to consent to the search. Abelenda, however, supports his contention that his ability to communicate in English is so poor as to render his consent to the search of his automobile involuntary, by pointing to the Government's request that he testify at trial with the aid of an interpreter.

This Court has indicated that, in regard to Spanish speaking defendants, where there is sufficient conversation between the suspect and law enforcement officers to demonstrate that the suspect had an adequate understanding of English to fully comprehend the situation, a finding that consent was voluntary may be proper. In the instant case, the district court relied on the testimony of the state trooper and of Agent Luzinski in concluding that Abelenda was sufficiently capable of communicating in English. In as much as such a finding rests on a decision to credit the testimony of these two witnesses, it must be affirmed. As this Court stated in *United States v. Tedford*, 875 F.2d 446 (5th Cir.1989), a finding of consent will not be disturbed unless it is clearly erroneous.

In the instant case, clear error has not been shown. Abelenda was properly stopped for speeding. The officer did not engage in coercive behavior when requesting that Abelenda consent to a search of his automobile, and the district court found that Abelenda had a sufficient grasp of the English language to understand the consent form. Consequently, we cannot conclude that the district court's finding that Abelenda voluntarily consented was clearly erroneous.

Additionally, Abelenda contends that, while he may have consented to the search of the vehicle, he did not consent to a search of the bags contained therein. This argument is belied by the text of the consent form, which indicates consent to search the automobile as well as its contents.

### Sufficiency of the Evidence

■ All three appellants contend that the evidence is insufficient to support their convictions. In ruling on a claim of insufficient evidence, this Court reviews the evidence in the light most favorable to the Government, making all reasonable inferences and credibility choices in favor of the verdict. *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). The conviction must be affirmed if any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

Alvarado and Abelenda were convicted of conspiring, between April 14 and October 8, 1988, to distribute cocaine, and of possessing cocaine with the intent to distribute it on August 1, 1988. Medina and Alvarado were convicted of conspiring to possess with intent to distribute cocaine, between October 9 and October 12, 1988, and of possessing cocaine with the intention of distributing it on October 12, 1988.

In order to establish a drug conspiracy, the Government must show (1) the existence of an agreement to import or to possess with intent to distribute, (2) knowledge of the agreement and (3) voluntary participation in the agreement. *United States v. Gonzales*, 866 F.2d 781 (5th Cir.), *cert. denied,* ──── U.S. ────, 109 S.Ct. 2438, 104 L.Ed.2d 994 (1989). These elements may be established by circumstantial evidence. *United States v. Ayala,* 887 F.2d 62 (5th Cir.1989).

Alvarado challenges his conviction primarily through recitation of what the Government did not do, rather than by disputing what the Government did in fact show. Alvarado points out that the Government did not utilize listening devices, did not obtain fingerprints and did not photograph the meetings between Luzinski and Alvarado. While we are in agreement that such direct evidence would have been useful in proving the offense, it has never been a necessity that a crime be proved by the most convenient or most persuasive evidence. Rather, this Court looks to the evidence that was in fact before the jury, and does not speculate about what other evidence could have been presented.

In challenging his conviction, Abelenda points out that Luzinski never observed Abelenda with cocaine. Like Alvarado, Abelenda notes that there are no photographs or eyewitnesses of him with any cocaine. Nor, he points out, were any fingerprints lifted from the package of cocaine. His only mistake, Abelenda would have us believe, was a mistake in associating with Alvarado. As Abelenda points out, mere presence or association is insufficient to prove participation in a conspiracy. *United States v. Bland,* 653 F.2d 989 (5th Cir.1981), *cert. denied,* 454 U.S. 1165, 102 S.Ct. 1043, 71 L.Ed.2d 323 (1982).

The evidence in fact before the jury demonstrates that Alvarado negotiated with Luzinski for the sale of cocaine to be delivered on August 1, 1988, and again on October 12, 1988. Abelenda's arrival coincided with Alvarado's statement to Luzinski that the cocaine was in town. Alvarado later placed the money used to purchase the cocaine in Abelenda's car. A substantial amount of this money was later discovered in Abelenda's trunk. Furthermore, Alvarado told Luzinski that Abelenda, the Old Man, had brought the cocaine.

That this evidence is largely circumstantial does not prohibit our conclusion that it is sufficient to support the convictions for conspiracy. *See United States v. Rodriguez–Mireles,* 896 F.2d 890, 891 (5th Cir. 1990). Abelenda asserts that the only evidence linking him to the conspiracy is his mere presence and association with Alvarado. We do not agree. When Abelenda's presence is examined in light of his timely arrival, the bag he was seen carrying, the money placed in his car, the references to him as the Old Man and the purchase money found in his trunk, it is clear that a rational juror could have found Abelenda to be a knowing, voluntary conspirator. *See Rodriguez–Mireles, supra.*

Medina bases his argument that there was insufficient evidence to support his conviction as a conspiracy participant largely on the acquittal of de Miranda. We reiterate that, in reviewing a sufficiency of the evidence claim, this Court looks at the sufficiency of the evidence supporting the conviction. There was sufficient evidence before the jury to support the jury's conclusion that Medina was a participant in the conspiracy. Medina was seen meeting with Alvarado on the morning of October 12. Alvarado told Luzinski that the two people who had come with him to the office-garage were taking the cocaine out of its hiding place in the car. Terrell testified that he saw Medina removing the backseat of the car. Shortly thereafter, cocaine was produced and displayed to Luzinski. At the time of his arrest, Medina was discovered with papers indicating his association with Alvarado, specifically Alvarado's pager number, a notation of a cellular phone number one digit off from Alvarado's, and the telephone number at the office-garage. This evidence, taken cumulatively, is sufficient to support the jury's conclusion that Medina was a participant in a conspiracy.

■ Each appellant was also convicted of a substantive offense of possession. Alvarado was convicted on two such counts, while Medina and Abelenda were each convicted of one count of possession. A conviction for possession requires proof that a defendant had knowing possession of a controlled substance with the intent to distribute it. *See United States v. Hernandez–Palacios,* 838 F.2d 1346 (5th Cir.1988). After reviewing the record, including the facts set forth above, we are convinced that there was sufficient evidence to conclude that Alvarado possessed the cocaine with the intent to distribute it in the context of both the August and October conspiracies.

■ It is not necessary that the evidence establish the actual or constructive possession of either Medina or Abelenda in order to uphold their convictions on the substantive count of possession. As co-conspirators, each is liable for the substantive offenses of other members of the conspiracy committed in furtherance of the conspiracy. *See Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946); *United States v. Medina,* 887 F.2d 528 (5th Cir.1989). The district court, although not specifically instructing the jury as to the rule in *Pinkerton,* did instruct the jury as to the effect of an agency relationship, and to the fact that each co-conspirator acts as the agent of the others when acting in furtherance of the conspiracy. Record Vol. 9 at 783 and 787. Applying this rule, we conclude that the jury's guilty verdict as to the substantive possession charges against Abelenda and Medina was not reversible error.[1]

### *Application of the Sentencing Guidelines*

Both Alvarado and Abelenda challenge the district court's findings that they were leaders, managers or supervisors for sentencing purposes. Additionally, Abelenda argues that the district court should have departed from the Guidelines because of his age and infirmity. Alvarado argues that the district court should have departed from the Guidelines because he was courteous, well-dressed and behaved like a gentleman at trial. We perceive no reversible error in the district court's application of the Guidelines.

Pursuant to Section 3B1.1(c) of the Guidelines, if there is a finding that the defendant is a manager, organizer, leader or supervisor in any criminal activity, then the Guidelines indicate that the offense level is to be increased by two levels. The commentary accompanying this section sets out factors for the district court to consider such as the exercise of decision-making authority, the nature of the participation in the offense, the right to a share of the fruits of the crime, the degree of participation in the planning stages and the degree of control and authority over others. A finding that a defendant was a leader, organizer, manager or supervisor is reversible only when it is found to be clearly erroneous.

■ In the instant case, the district court based the upward adjustment as to Alvarado on several factors. Alvarado was the principal negotiator in both conspiracies. Alvarado discussed shipments of up to fifty kilograms with Luzinski. Furthermore, Alvarado's presentence investigation report indicates that he operated in a fashion to facilitate the movement of the first shipment of cocaine through Terrell and another individual, and that he worked through his brother to cause Medina to bring the second shipment of cocaine in from Florida. As to Abelenda, the court considered that he brought the first kilogram over from Texas, that Alvarado gave him the full amount of the money, and that some of the money was missing when the car was searched. That Abelenda had dealt with the proceeds indicates that he was entitled to dispose of the funds and was not merely a courier.

Examining these facts in light of the factors set forth above, we cannot say that

---

1. Because we conclude that the possession convictions of Abelenda and Medina may be upheld under the co-conspirator rule, we do not ad-

dress whether the evidence was sufficient to establish the actual or constructive possession of either defendant.

we are left with a definite and firm conviction that a mistake was made by the district court. *See, e.g., United States v. Shaw,* 894 F.2d 689 (5th Cir.1990).

█ Nor do we accept either appellant's argument that the district court erred in failing to depart from the Guidelines. In *United States v. Buenrostro,* 868 F.2d 135 (5th Cir.), *cert. denied en banc,* 873 F.2d 297 (1989), this Court indicated that a district court's refusal to depart from the Guidelines will be upheld unless the actual sentence imposed is in violation of the law. Neither appellant has suggested that such a violation has occurred.

### *Motion for New Trial*

█ Prior to sentencing, Medina offered exculpatory affidavits from de Miranda and Abelenda in support of a Motion for New Trial. The district court denied the motion. Such a denial is reviewed for an abuse of discretion. *United States v. Miliet,* 804 F.2d 853 (5th Cir.1986).

█ Medina acknowledges the well-settled principle that in order to prevail on a Motion for New Trial based on newly discovered evidence, the moving party must show that the evidence has been discovered since the trial, the facts alleged show diligence on the part of the movant, the evidence is not merely cumulative, the evidence is material, and the evidence is of such a nature that it would probably produce an acquittal. *See Miliet,* 804 F.2d 853; *United States v. Offutt,* 736 F.2d 1199 (8th Cir.1984). Medina also acknowledges that the affidavits are not considered "newly discovered evidence" within the meaning of Rule 33 of the Federal Rules of Criminal Procedure. *See McAteer v. United States,* 148 F.2d 992 (5th Cir.1945); *United States v. Diggs,* 649 F.2d 731 (9th Cir.), *cert. denied,* 454 U.S. 970, 102 S.Ct. 516, 70 L.Ed.2d 387 (1981). Even so, Medina urges this Court to adopt a case-by-case analysis. We are not now inclined to do so. Even if we were to adopt such a procedure, it is not clear that Medina would prevail. Consequently, we cannot say that the district court abused its discretion in denying the new trial motion.

### III. CONCLUSION

Having examined each of the three appellant's contentions, we conclude that no reversible error has been shown. Consequently, we affirm.

AFFIRMED