**UNITED STATES of America**

v.

**J. Michael MORRISSEY.**

**Crim. No. 89–00510.**

United States District Court, E.D. Pennsylvania.

May 21, 1990.

Lee J. Dobkin, Asst. U.S. Atty., Philadelphia, Pa., for plaintiff.

Elliott Goldberg, Paoli, Pa., for defendant.

## OPINION AND ORDER

VAN ANTWERPEN, District Judge.

In a criminal jury trial held from February 21, 1990 to March 1, 1990, the defendant, J. Michael Morrissey, the former District Attorney of Berks County, was found guilty by the jury of conspiracy to manufacture an ingredient of methamphetamine called phenyl–2–propanone (P–2–P), aiding and abetting the manufacture of P–2–P, and aiding and abetting the manufacture of methamphetamine, an illegal drug. The defendant has filed a post-trial motion seeking a new trial under Fed.R.Crim.P. 33. The defendant seeks a new trial on three grounds: insufficiency of the evidence and unreasonableness of the verdict; failure of the Government to disclose certain evidence in a timely manner; and after-discovered evidence. After oral argument, and after a review of the briefs of counsel, of the record, and of the applicable law, we find that we must deny defendant's motion.

I. *Insufficiency of the Evidence and Unreasonableness of the Verdict*

It is well-settled that a motion for a new trial based on insufficient evidence merits denial if *"any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). A court's task is to determine whether substantial evidence, viewed in the light most favorable to the prosecution, supports the jury's guilty verdict. *See Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). As the Third Circuit has recognized, a decision to reverse a conviction on grounds of insufficient evidence "should be confined to cases where the prosecution's failure is clear." *Government of Virgin Islands v. Brathwaite,* 782 F.2d 399, 404 (3d Cir. 1986).

 Under these standards, a new trial is not warranted in the instant case. The Government presented more than ample evidence of the defendant's guilt and central role in the production of illegal drugs. All government witnesses were sequestered during the trial. The Government's first witness, Arthur Auchenbach, provided a detailed accounting of his drug-related dealings with the defendant, which stretched from the summer of 1985 through January, 1986. (Trial Transcript, hereinafter "Tr. T.", 2/21/90, pp. 20–180). Auchenbach testified, *inter alia,* that in the summer of 1985 he discussed the manufacture of P–2–P with the defendant (Tr. T. 2/21/90, pp. 23–25); provided the defendant with a list of necessary ingredients to make P–2–P (Tr. T. 2/21/90, pp. 25–27); received chemicals from the defendant (Tr. T. 2/21/90, pp. 33–34); delivered P–2–P to the defendant (Tr. T. 2/21/90, pp. 34–37); and received payment from the defendant for that delivery (Tr. T. 2/21/90, pp. 45–46). Auchenbach further testified that, in the fall of 1985 through the winter of 1986, he manufactured P–2–P for the defendant through John Showalter (Tr. T. 2/21/90, pp. 52–60; pp. 66; 71; 123), and ultimately confronted the defendant about a lack of payment (Tr. T. 2/21/90, pp. 77–78). Auchenbach also noticed the smell of methamphetamine manufacture coming from a trailer on the defendant's farm. (Tr. T. 2/21/90, pp. 82–83).

The Government's second witness, John Showalter, also recounted his first-hand relationship with the defendant in the manufacture of P–2–P. Showalter described receiving a formula for the manufacture of P–2–P from the defendant (Tr. T. 2/22/90, pp. 9–12); receiving chemicals from the defendant (Tr. T. 2/22/90, pp. 18–19); delivering P–2–P to the defendant on numerous occasions (Tr. T. 2/22/90, pp. 28; 32–33; 38; 41–42); and receiving two payments from the defendant for these deliveries (Tr. T. 2/22/90, pp. 35; 39; 104). Showalter also testified that the defendant planned to allow the methamphetamine "cooks" to use a trailer on the defendant's farm to manufacture illegal substances. (Tr. T. 2/22/90, p. 49).

Two expert witnesses provided yet additional evidence and corroboration of the defendant's guilt. An FBI agent, John C. Ransom, confirmed that a handwritten list of ingredients for the manufacture of P–2–P, taken from Arthur Auchenbach's residence during a raid, had been written by the defendant. (Tr. T. 2/21/90, pp. 188–195). At trial, the defendant ultimately admitted he had written the list. A DEA chemist, Jack Fasanello, authenticated a log, authored by Auchenbach during his dealings with Showalter and the defendant, which had also been seized from Auchenbach's home. (Tr. T. 2/22/90, pp. 148–159).

Allison and Clifford Williams also testified regarding their dealings with the defendant in the winter of 1985–1986. They described meeting with the defendant to plan for the receipt of P–2–P from the defendant (Tr. T. 2/23/90, pp. 37–38); their use of his farm facilities to manufacture it into methamphetamine (Tr. T. 2/23/90, pp. 41–42; 45; 184; 198; Tr. T. 2/26/90, p. 19); and their payments to the defendant for these services (Tr. T. 2/23/90, p. 185). They also recounted that the defendant said that he would send his farm-hand, Jeff Carabello, away on a trip to facilitate the

Williams brothers' manufacture of methamphetamine in a trailer on his farm. (Tr. T. 2/23/90, pp. 37; 184).

Finally, Jeff Carabello acknowledged that, while he was working on the defendant's farm, the defendant suggested he take a trip. Upon his return, he had noticed that someone had made use of his trailer and he noticed a smell in the trailer that he associated with methamphetamine. (Tr. T. 2/26/90, pp. 111–114).

In the face of this evidence, the defendant nevertheless contends that the Government witnesses should be completely rejected as incredible, on the basis of the "material contradictions between [their] testimony, as well as incontrovertible, physical evidence establishing the near impossibility such circumstances of defendant's involvement occurred." (Para. 11 of defendant's Motion for New Trial).

We can find no such contradictions in this case and all alleged deficiencies were argued to the jury in defense counsel's closing argument at trial. The jury was given the chance to consider them and the evidence offered by the Government. The jury rejected these arguments, ultimately finding the Government witnesses, Auchenbach, Showalter, and the Williams brothers, credible in so far as their testimony inculpated the defendant on Counts One, Two and Four.

On the matter of credibility, it has been said:

It is axiomatic that, absent exceptional circumstances, issues of witness credibility are to be decided by the jury, not the trial judge. *United States v. Muskovsky*, 863 F.2d 1319, 1322 (7th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1345, 103 L.Ed.2d 813 (1989); *United States v. D'Antonio*, 801 F.2d 979, 982 (7th Cir.1986). In general, conflicting testimony or a question as to the credibility of a witness are not sufficient grounds for granting a new trial. *United States v. Indelicato*, 611 F.2d 376, 387 (1st Cir.1979); *Marshall v. United States*, 436 F.2d 155, 156 n. 1 (D.C.Cir. 1970). Where a witness' testimony is such that reasonable men could not have

believed the testimony, however, then exceptional circumstances are present and the district court may take the testimony away from the jury. *Holland v. Allied Structural Steel Co., Inc.*, 539 F.2d 476, 483 (5th Cir.1976), *cert. denied,* 429 U.S. 1105, 97 S.Ct. 1136, 51 L.Ed.2d 557 (1977). The exception is an extremely narrow one, however, and can be invoked only where the testimony contradicts indisputable physical facts or laws. *Zollman v. Symington Wayne Corporation*, 438 F.2d 28, 31 (7th Cir.), *cert. denied,* 404 U.S. 827, 92 S.Ct. 59, 30 L.Ed.2d 55 (1971); *United States v. Smith*, 592 F.Supp. 424, 441 (E.D.Va.1984), *vacated on other grounds*, 780 F.2d 1102 (4th Cir.1985).

*United States v. Kuzniar*, 881 F.2d 466, 470–471 (7th Cir.1989) (footnote omitted).

The jury in the instant case has chosen to believe the witnesses referred to above. This is their prerogative and we shall not disturb it. We find no "exceptional circumstances", as defined by *Kuzniar*, which would compel us to do so and we note that other evidence, most notably, the list of chemicals in the defendant's own handwriting, is a very damning piece of independent evidence.

The defendant also bases his motion for a new trial on the admission of various "co-conspirator statements". The defendant is less than crystal clear as to which statements he is challenging. He refers in passing to statements of the defendant to Showalter and to the Williams brothers. He also refers to Joseph Pastore's statements to the Williams brothers.

■ We fail to understand this position because the myriad of inculpatory statements which the defendant made directly to Arthur Auchenbach, John Showalter, Allison Williams and Clifford Williams— statements which these witnesses personally recounted—were not admitted pursuant to the "co-conspirator" exception to the hearsay rule. These statements were introduced pursuant to Fed.R.Evid. 801(d)(2)(A) as admissions by a party opponent, namely the defendant Morrissey. Such statements are not considered to be

hearsay under the Federal rules. In conjunction with the defendant's conduct, they amply supported the defendant's conviction for the conspiracy charged.

■ In addition, the co-conspirator statements which were admitted, such as Pastore's relaying to the Williams brothers the defendant's willingness to provide the substance known as P–2–P, merited admission. On the weight of the substantial evidence recounted above, the Court determined that the Government had established the existence of a conspiracy, and the defendant's membership therein, by a preponderance of the evidence. The co-conspirator statements themselves may be considered in a Court's initial determination of existence of a conspiracy and defendant's membership therein. *Bourjaily v. United States*, 483 U.S. 171, 107 S.Ct. 2775, 2781, 97 L.Ed.2d 144 (1987). The fact that new members joined the conspiracy as time went on and old members may have dropped out in no way vitiates the Court's finding that a single, ongoing conspiracy existed. *United States v. Green*, 523 F.2d 229 (2d Cir.) *cert. denied*, 423 U.S. 1074, 96 S.Ct. 858, 47 L.Ed.2d 84 (1975).

Lastly, even assuming, *arguendo*, that a particular statement or statements were wrongly admitted (which they were not), the defendant cannot point to a prejudice which would merit a new trial. Substantial direct evidence of the defendant's guilt would render the co-conspirator statements merely cumulative. *United States v. Miliet*, 804 F.2d 853, 858 (5th Cir.1986) (new trial not warranted because erroneously admitted hearsay evidence merely cumulative).

For all of the foregoing reasons, we are compelled to reject the defendant's Motion for a New Trial on the basis of insufficiency of the evidence and unreasonableness of the verdict.

## II. *Disclosure of Evidence and Timeliness*

The defendant also seeks a new trial on the basis of the Government's alleged failure to disclose allegedly exculpatory material (*e.g.*, another alleged drug laboratory location and a trip by one Bill Williams to the defendant's farm with Joseph Pastore) in a timely fashion. Such failure, the defendant argues, prevented the defense from using such materials during the cross-examination of key Government witnesses, thereby denying the defendant due process. Review of the record, however, rebuts this claim.

Even before the trial ever began, defense counsel was provided with complete and timely discovery which related to these individuals. This discovery included (1) correspondence setting forth the Williams brothers' agreement with the Government; (2) full criminal extracts of their prior records; (3) their grand jury testimony; (4) an FBI report of interview with the Williams brothers dated March 19, 1986, complete with rough agent notes; and (5) two DEA reports of interview with the Williams brothers dated July 8, 1987 and October 27 and 29, 1987, complete with rough agent notes. Relying on these materials, attorneys for both the defendant and the co-defendant Pastore cross-examined the Williams brothers extensively and exhaustively, focusing in large part on alleged inconsistencies between their various prior accounts of their relationship with the defendant.

During the course of the defense case, counsel for the defendant requested that a certain FBI agent named John Osborne be made available on February 28, 1990 to be called as a defense witness. Counsel for the Government assisted the defense and contacted Special Agent Osborne. In so doing, the U.S. Attorney learned for the first time that the FBI had conducted two additional interviews with the Williams brothers, on May 13, 1986 and August 8, 1986. Reports of these interviews, as well as Special Agent Osborne's rough notes, were provided to the defense on February 28, 1990.[1] (Tr. T. 2/28/90, pp. 2 & 3).

---

1. The Government also disclosed, at this time, results of a polygraph of Allison Williams which occurred in August, 1986. The defendant has not—and could not—contend that the result of this test would have been admissible, if provid-

Defense counsel raised no objection to the Government's production of these materials at the time. In particular, the defense neither advised the Court that it needed a recess to review the FBI materials, nor that it wished to recall the Williams brothers, or any other government witnesses, to the stand. The defense chose not to call Special Agent Osborne, despite its earlier announced intent to do so.

The defendant now urges this Court that a new trial is necessary to "avert a manifest injustice" stemming from this "delayed" discovery. We do not agree with the defendant.

■ First, the materials in question were not furnished late. The reports of interview and rough notes constituted a discoverable, Jencks Act "statement" of Special Agent Osborne. They were not statements of the Williams brothers, because they had neither adopted nor approved them. 18 U.S.C. § 3500(e)(1). Notes from a conversation with a witness constitute Jencks Act statements only when the witness reads or has notes read to him and then signs, adopts or approves them. *Goldberg v. United States*, 425 U.S. 94, 105–06, 96 S.Ct. 1338, 1345–46, 47 L.Ed.2d 603 (1976). As such, they would have been discoverable immediately after Agent Osborne's anticipated testimony. 18 U.S.C. § 3500(b). They were furnished before the agent was scheduled to testify and, as noted, he never did testify. The mere fact that the defendant now speculates that these reports could have aided earlier examinations in no way confers an obligation to produce them earlier. Jencks Act statements by a government witness are not discoverable until after the witness testifies, notwithstanding the fact that the statements would facilitate cross-examination of earlier witnesses. *United States v. Tarantino*, 846 F.2d 1384, 1414–15 (D.C. Cir.), *cert. denied*, 488 U.S. 867, 109 S.Ct. 108, 102 L.Ed.2d 83 (1988).

■ Second, the defendant's argument that earlier receipt of these materials would have prevented a "manifest injus-

ed earlier. *United States v. Brevard*, 739 F.2d

tice" is undermined by his counsel's reaction at the time they were received. Counsel for the defendant at no time requested a recess, or an opportunity to recall any Government witness at that time. The defendant cannot be heard now to claim for the first time that the FBI reports would have made a critical difference in earlier examinations, in view of the fact that the Court was never given notice or an opportunity by the defendant to "cure" this alleged problem through a brief recalling of the relevant witnesses.

Third, there was certainly no shortage of cross-examination and impeachment of the Government's primary witnesses, even without reference to the FBI reports at issue. The Court let both counsel go on and on in extensive cross-examination. In such a context, where the "new" material would be merely cumulative or impeaching, there is no basis to overturn the verdict. *See Government of Virgin Islands v. Lima*, 774 F.2d 1245, 1250 (3d Cir.1985) (new trial not warranted by newly discovered evidence of affidavits bolstering defendant's alibi defense because cumulative in nature); *United States v. Begnaud*, 848 F.2d 111, 112–113 (8th Cir.1988) (new trial not warranted by newly discovered evidence of witness deposition taken in subsequent civil proceedings because testimony merely impeaching); *United States v. McMahan*, 852 F.2d 337, 339 (8th Cir.1988) (new trial not warranted by newly discovered evidence that primary government witness had stolen cars because merely cumulative and impeaching); *United States v. McIntyre*, 836 F.2d 467, 472 (10th Cir.1987) (new trial not warranted by newly discovered evidence, receipt of which corroborates defendant's trial statement because merely cumulative and jury could have inferred the same); *Lewis v. United States*, 771 F.2d 454, 456–57 (10th Cir.1985) (new trial not warranted when newly discovered testimony contradicting police sergeant's statement that defendant at store on night of burglary useful only to impeach sergeant's testimony), *cert. denied*, 474 U.S. 1024, 106 S.Ct. 579, 88 L.Ed.2d 562 (1985).

180 (4th Cir.1984).

We, therefore, find no error in the timing of the Government's release of the materials at issue here.

### III. *After–Discovered Evidence*

■ Finally, the defendant seeks a new trial on the basis of what he characterizes as newly discovered evidence. The defendant contends that a defense witness, Harold Dietrich, who was present for much of the trial, realized only after his testimony that he had relevant information regarding the time frame in which another witness, defendant's farm-hand Jeffrey Carabello, detected the odor of methamphetamine on the defendant's property. It is not clear precisely what Dietrich is prepared to testify to, and the Dietrich affidavit, said to be forthcoming, has never been filed with the Court. The defendant's assertion, even if true, falls well short of the standards governing the granting of a new trial.

The Third Circuit has enunciated the criteria which must be met before a new trial should be ordered on the basis of newly discovered evidence:

> (a) the evidence must be in fact, newly discovered, i.e., discovered since the trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) the evidence relied on, must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal. [Citations omitted.]

*United States v. Iannelli,* 528 F.2d 1290, 1292–1293 (3d Cir.1976).

As we shall explain below, the defendant in the instant case fails in several ways to meet these criteria.

First, the defendant cannot show how his failure to question his own witness, Harold Dietrich, regarding an area of inquiry the defendant now believes would have impeached the Government's case, resulted from anything other than his own lack of diligence. This is particularly true since the defendant knew of the substance of his employee Carabello's testimony weeks prior to trial; Carabello was a witness for the defense, as well as a government witness. *See, e.g., Lima,* 774 F.2d at 1250 (new trial denied when testimony of witness who lived across street from defendant could have been discovered with due diligence).

Second, there is no reason to believe that this peripheral new evidence—one witness' estimate of when another witness detected methamphetamine—would probably result in an acquittal—the burden which the defendant must satisfy. *United States v. O'Dell,* 805 F.2d 637, 643 (6th Cir.1986) (subsequent exculpatory statement of co-conspirator unlikely to produce acquittal when substantial evidence of conspiracy presented at trial), *cert. denied,* 484 U.S. 859, 108 S.Ct. 170, 98 L.Ed.2d 124 (1987); *United States v. Estabrook,* 774 F.2d 284, 290 (8th Cir.1985) (newly discovered evidence serving only to attack credibility of Government's witness by offering alternative version of facts at most created conflict in evidence, not likelihood of acquittal).

The defendant has fallen well short of meeting the burden required of those who seek a new trial on the basis of after-discovered evidence. We must, therefore, reject this argument in favor of a new trial, as well.

An appropriate Order follows.

### ORDER

AND NOW, this 21st day of May, 1990, it is hereby ORDERED that the defendant's Motion for New Trial is DENIED. To afford the defendant an opportunity to wind-up all his affairs, the original sentencing is continued and sentencing is hereby rescheduled for Monday, July 9, 1990, at 10:30 A.M. in U.S. District Courthouse, 601 Market St., Philadelphia, Pa., Courtroom 7A.