UNITED STATES of America, Plaintiff–Appellee,

v.

Juan VIZCARRA–PORRAS, Defendant–Appellant.

No. 89–1126.

United States Court of Appeals, Fifth Circuit.

Nov. 29, 1989.

Rehearing and Rehearing En Banc Denied Jan. 11, 1990.

William R. Maynard, Asst. Federal Public Defender, Lucien B. Campbell, Federal Public Defender, El Paso, Tex., for defendant-appellant.

Mervyn Hamburg, Atty., Appellate Section, Crim. Div., Dept. of Justice, Washington, D.C., LeRoy Morgan Jahn, Asst. U.S. Atty., Helen M. Eversberg, U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before WISDOM, JOHNSON and HIGGINBOTHAM, Circuit Judges.

JOHNSON, Circuit Judge:

Juan Vizcarra–Porras appeals his conviction for possession of heroin with intent to distribute. For the reasons cited herein, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

Until January 1989, Juan Vizcarra–Porras (hereafter Vizcarra) earned a living by buying merchandise in El Paso, Texas, and reselling it in Jimenez, Mexico, for a profit. While in El Paso in February 1988, Vizcarra was approached by Jesus Navarette, a business acquaintance of Vizcarra. Navarette suggested to Vizcarra that Vizcarra could make more money dealing in contraband than in legitimate merchandising. Navarette also suggested to Vizcarra that a man by the name of Victor Gonzalez could help Vizcarra get started in the contraband business. Vizcarra asserts that he initially spurned Navarette's suggestions. Unknown to Vizcarra, Victor Gonzalez (hereafter Gonzalez), at the time, was acting as a Government informant.

Some time later in March 1988, Vizcarra began receiving telephone calls from Gonzalez at Vizcarra's store in Jimenez. Gonzalez told Vizcarra that if Vizcarra would

get some heroin in Mexico, that Vizcarra could make good money selling the drug in the United States. Vizcarra allegedly declined Gonzalez's offer. Even so, the telephone calls from Gonzalez did not cease and Gonzalez began leaving messages for Vizcarra. In May 1988, Vizcarra called Gonzalez back. Gonzalez reurged his offer, and again Vizcarra allegedly told Gonzalez that he was not interested in drug trafficking.

Although Vizcarra maintained that he regularly declined Gonzalez' offers, it was his recitation that two young Mexican cowboys one day appeared at Vizcarra's store in Jimenez. The cowboys had a package of "black" heroin which they tendered to Vizcarra. As a down payment for the heroin, Vizcarra gave the men four television sets from his shop. Later that night, Vizcarra, carrying the heroin, took a bus to the El Paso border town of Juarez where he checked into a hotel. After concealing the heroin in his room, Vizcarra crossed the border to El Paso and placed a telephone call to Gonzalez.

Gonzalez thereafter met Vizcarra in El Paso. At that meeting, Vizcarra expressed his concern to Gonzalez about how the heroin would be brought across the border. Gonzalez, seeking to allay Vizcarra's fears, promised Vizcarra that bringing the heroin across the border would be easy. Gonzalez recommended to Vizcarra that he put the heroin in his sock and simply walk across the border into El Paso. Gonzalez also at that time asked Vizcarra whether he wanted to be paid the $5,500 per ounce offering price in "hundreds" or "fifties."

Vizcarra returned to Juarez, got the heroin from his hotel room, put it in his sock, and headed back towards El Paso. Meanwhile, Gonzalez contacted United States Customs Officer Marco Payan and tipped Officer Payan that Vizcarra would be soon crossing the border with heroin. When Vizcarra reached the Paso Del Norte Port of Entry and entered this country, Gonzalez pointed Vizcarra out to Officer Payan. Officer Payan approached Vizcarra and asked Vizcarra if he had anything to declare. Vizcarra responded negatively. Officer Payan followed Vizcarra a bit and approached him again. When asked again if he had anything to declare, Vizcarra this time appeared somewhat shaken and turned back towards Mexico. Officer Payan then grabbed Vizcarra by the arm whereupon Vizcarra exclaimed, "you got me." Officer Payan then arrested Vizcarra. In response to later questioning by United States Customs Officers, Vizcarra admitted that he knew that the substance he was carrying was "from the poppy plant" and was intended for sale in El Paso.

Vizcarra was indicted on two counts of importation and possession with intent to distribute heroin in violation of 21 U.S.C. §§ 841(a)(1) and 952(a). Prior to trial, Vizcarra, urging an entrapment defense, sought the disclosure and compulsory testimony of the Government's confidential informant. Vizcarra asserted that he expected the informant, in essence, to testify that Vizcarra had not been predisposed to transport the heroin but instead had been pressured to do so by the repeated proddings of the confidential informant. The Government, on the other hand, contending that the informant had not played a significant role in the drug transaction, resisted disclosure of the informant's identity.

At an evidentiary hearing on Vizcarra's motion for disclosure, Customs Officer Payan testified that there was only one confidential informant in the case, and that informant went by the name "Victor Gonzalez." Officer Payan further testified that Gonzalez, on the day of Vizcarra's arrest, was present at the border and identified Vizcarra for Officer Payan. In his defense, Vizcarra testified that he had not been interested in smuggling the heroin, but finally did so because of Gonzalez's unrelenting pressure and promise of payment.

After hearing testimony from both sides, the district court ruled that Vizcarra did not have a viable entrapment defense and denied the motion for disclosure. In so ruling, the district court concluded that Vizcarra had not sustained his burden of showing that the confidential informant, if

called to testify at trial, would aid Vizcarra's defense. Nevertheless, the district court, at Vizcarra's urging, instructed the jury on entrapment.

After a trial by jury, Vizcarra was convicted and was sentenced to sixty-three months' imprisonment. Thereafter, Vizcarra filed this timely appeal.

## II. DISCUSSION

### A. *The Identity of the Confidential Informant*

On appeal, Vizcarra assigns error to the district court's refusal to compel the testimony of the confidential informant and the district court's refusal to order the Government to reveal the informant's identity. In *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), the Supreme Court set forth general guidelines regarding the disclosure and compulsory testimony of confidential informants. The essence of those guidelines is a balancing test; the appropriate approach compares the public interest in providing anonymity to citizens who report criminal activity with a defendant's right to prepare his defense. Interpreting *Roviaro*, this Court, in *United States v. Toro*, articulated a three part test to determine when disclosure is mandated. The three prongs of the test are: 1) the level of the informant's activity; 2) the helpfulness of disclosure to the asserted defense; and 3) the Government's interest in nondisclosure. *United States v. Toro*, 840 F.2d 1221, 1232 (5th Cir.1988).

This Court's standard of review of whether the district court erred in ruling on a motion to disclose and compel the testimony of a confidential informant is whether the district court abused its discretion. *United States v. De Los Santos*, 810 F.2d 1326, 1332 (5th Cir.1987). To the extent that the district court's ruling is based on findings of fact, those findings are reviewed under a "clearly erroneous" standard. *United States v. Maldonado*, 735 F.2d 809, 814 (5th Cir.1984). Thus, this Court will not disturb the district court's ruling on a motion to compel unless the district court's factual findings underlying the ruling are clearly erroneous and the ruling itself amounts to an abuse of discretion.

In the instant case, the district court focused on the second element of the *Toro* test—the potential benefit of disclosing the identity of the informant and compelling his testimony to Vizcarra's entrapment defense. In order to establish a viable entrapment defense in the instant case, Vizcarra would have had to show his own lack of predisposition to smuggle heroin and that the Government's involvement went beyond merely providing the opportunity and facilities to smuggle the heroin. *United States v. Andrew*, 666 F.2d 915, 922 (5th Cir.1982). If Vizcarra made such a showing, the burden would then shift to the Government to prove beyond a reasonable doubt that the defendant was predisposed to commit the charged crime. *United States v. Henry*, 749 F.2d 203, 207 n. 5 (5th Cir.1984) (en banc).

At the hearing on the motion to disclose, Vizcarra himself testified that his primary motivation in deciding to smuggle the heroin was money. He admittedly sought to make a profit. Even assuming as true Vizcarra's contentions that he repeatedly resisted Gonzalez's offers, Vizcarra nevertheless decided to do the deed. Vizcarra travelled alone from Jimenez to Juarez with the heroin. Vizcarra telephoned Gonzalez upon arrival in El Paso. Vizcarra put the heroin in his sock and walked across the border.[1] Vizcarra expected to be paid over $5,000 for the heroin.

1. On the basis of Vizcarra's testimony alone, we are persuaded that the district court correctly concluded that the informant's testimony would likely harm rather than help Vizcarra's defense. We further observe that the only thing that Gonzalez apparently did was to provide a buyer for the drugs which Vizcarra transported to the United States. As we have held before, offering an individual the opportunity and facilities to smuggle drugs does not equate to entrapment. *United States v. Jackson*, 700 F.2d 181, 191–92 (5th Cir.1983). Moreover, we also note that the actions of a member of the public cannot provide an entrapment defense; only the actions of the Government give rise to the defense of entrapment.

On the aforementioned facts and under the governing standard of review, we conclude that the district court's findings of fact regarding the viability of Vizcarra's entrapment defense were not clearly erroneous. Accordingly, we are constrained to conclude that the district court's denial of the motion to disclose was not an abuse of discretion.

### B. *The Hearsay Testimony*

■ During the Government's direct examination of Officer Payan, the prosecutor asked Officer Payan how he came to meet Vizcarra. Over Vizcarra's objection on hearsay grounds, Officer Payan testified that Gonzalez told Officer Payan about a conversation which Gonzalez had with a man named Juan (Vizcarra). Officer Payan testified that he (Payan) had received information that a person named Juan (Vizcarra) wanted to sell heroin. Officer Payan also testified that Gonzalez kept Officer Payan abreast of further conversations between Gonzalez and Vizcarra, and that on the day of the arrest Gonzalez had contacted Officer Payan to advise Officer Payan that Vizcarra would have the heroin and would be coming across the border.

Vizcarra's defense counsel made several hearsay objections to this line of testimony. Vizcarra's counsel further argued to the district court that the Government, by eliciting such testimony, was attempting to improperly show that Vizcarra was predisposed to smuggling heroin. The Government responded that the testimony was not elicited to show that Vizcarra was predisposed to smuggle heroin, but rather to demonstrate to the jury how the Government came to investigate Vizcarra. The district court agreed with the Government and overruled all of the objections to the testimony on hearsay grounds. The district court further recited that Officer Payan's testimony was not hearsay because it was not offered to prove the truth of the matters to which Officer Payan was testifying. As a prophylactic measure, the district court gave the jury explicit limiting instructions regarding the challenged testimony.

Vizcarra makes a number of arguments on appeal with regard to the admission of Officer Payan's testimony. In essence, Vizcarra argues that the stated purpose for which the Government offered Officer Payan's testimony—to explain Officer Payan's actions in stopping and searching Vizcarra at the border—was bogus. More specifically, Vizcarra alleges that the Government's real motive was to rebut an entrapment defense, a motive which Vizcarra claims was improper. In any event, crucial to Vizcarra's argument both at trial and on appeal regarding Officer Payan's testimony is the assumption that the challenged testimony was hearsay.

To begin with, we are not prepared to conclude that the challenged testimony was hearsay. As defined by the Federal Rules of Evidence, hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). Thus, if the proponent of challenged testimony is not seeking to establish the truth of the assertions found in the challenged testimony, then that testimony simply does not fall under the proscriptions against the use of hearsay under the Federal Rules of Evidence.

In the instant case, the Government consistently maintained that the testimony was not being offered to prove the truth of the matter being testified to. Instead, the Government asserted that the only reason for tendering the challenged testimony was to explain the origin of the Government's investigation of Vizcarra and to explain why Officer Payan approached Vizcarra at the border. The district court likewise concluded that the testimony fell outside the definition of hearsay and was therefore admissible.

■ Vizcarra nevertheless contends that the admission of the challenged testimony was error which affected a substantial and constitutional right under the sixth amendment's confrontation clause, and is therefore subject to a harmless error standard. An error affecting a substantial and constitutional right is harmless only if the

Government shows that the error did not contribute to the verdict. *Chapman v. California*, 386 U.S. 18, 22, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967). After reviewing the record in this case, we are persuaded that the Government has shown that the error, if any, occasioned by the district court's refusal to sustain Vizcarra's hearsay objections to Officer Payan's testimony, did not contribute to the verdict. In support of that conclusion, it is again noted that the district court repeatedly gave the jury limiting instructions regarding the use of the challenged testimony. Accordingly, we are unable to conclude that the jury in this case departed from the "almost invariable assumption of the law that jurors follow instructions." *Richardson v. Marsh*, 481 U.S. 200, 107 S.Ct. 1702, 1707, 95 L.Ed.2d 176 (1987) (citations omitted).

### C. *The Telephone Bill*

█ While testifying on Vizcarra's behalf, Vizcarra's adult son identified Defense Exhibit # 12 as a record of long distance calls made from Vizcarra's place of business during part of April 1988, and part of May 1988. Exhibit # 12, which was admitted into evidence, showed that telephone calls had been made on May 24, 1988, and May 25, 1988, from Vizcarra's shop in Jimenez to a telephone number in El Paso. When Vizcarra's defense counsel tendered a telephone bill covering the monthly period immediately prior to that covered by Exhibit # 12 to Vizcarra's son for his inspection, the Government objected on notice and relevancy grounds. Vizcarra's defense counsel responded that the challenged telephone bill was relevant because it showed that no telephone calls were made to El Paso during the month of April. The district court disallowed the bill concluding that it was irrelevant.

On appeal, Vizcarra claims that the district court erred in ruling that the telephone bill was irrelevant. In reviewing the district court's ruling, we are guided by the principle that the district court has wide discretion to determine the relevancy of the evidence, and a decision on whether or not to admit evidence will not be disturbed absent a showing of a substantial abuse of discretion. *United States v. Caldwell*, 820 F.2d 1395, 1403 (5th Cir.1987). *United States v. Silva*, 748 F.2d 262, 264–65 (5th Cir.1984). On the facts presented by this record in light of the above standards, we conclude that the district court did not err in refusing to admit the telephone bill into evidence. Moreover, we are of the opinion that providing the earlier telephone bill to the jury to show that no telephone calls were made during that time period would have had little or no effect on the jury's deliberations and ultimate verdict.

### D. *Testimony Regarding Payment to the Informant*

█ On cross-examination during the trial, Officer Payan was asked by Vizcarra's defense counsel if he knew whether Gonzalez had been paid for furnishing information to the Government in later cases. The Government's attorney objected to the question on relevancy grounds and the district court sustained the objection. Vizcarra's defense counsel neither disputed the ruling of the district court nor was any attempt made to show the relevance of the excluded testimony.

Assuming for the sake of argument that Vizcarra properly preserved the issue for appellate review, we are unable to find error which would warrant reversal. The district court's ruling on the admission of testimony regarding later payments to Gonzalez for information that he provided to the Government is a matter within the sound discretion of the district court. The district court's ruling will only be disturbed if it amounts to a clear abuse of discretion. *United States v. Carlock*, 806 F.2d 535, 553 (5th Cir.1986). This Court has repeatedly held that the district court is not bound to permit cross-examination regarding fees or rewards paid to informants in extraneous cases. *United States v. Elorduy*, 612 F.2d 986, 989 (5th Cir.1980); *United States v. Bower*, 575 F.2d 499, 503 (5th Cir.1978). Accordingly, the district court's exclusion of the testimony was not error.

### E. *An Improper Closing Argument?*

█ Finally, Vizcarra contends that the Government's attorney engaged in prosecu-

torial misconduct sufficient to give rise to reversible error during closing argument. Specifically, Vizcarra argues that the prosecutor improperly expanded upon background evidence, including what Vizcarra claims were inadmissible hearsay statements,[2] and improperly suggested to the jury that its Spanish speaking members were in a better position to assess Vizcarra's credibility.

After examining the challenged comments in context, we are not persuaded that the prosecutor's remarks warrant reversal. Rather, we are constrained to view the prosecutor's closing argument as substantively accurate. In any event, even if the comments of the prosecutor were inappropriate, standing alone, they "would not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding." *United States v. Young*, 470 U.S. 1, 11–12, 105 S.Ct. 1038, 1044–45, 84 L.Ed.2d 1 (1985).

## III.  CONCLUSION

We conclude that the district court did not err in refusing to compel the testimony of the Government's confidential informant. Further, we conclude that the district court's evidentiary rulings complained of were not error. Last, we find no reversible error in statements made by the prosecutor during closing argument. Accordingly, the conviction is affirmed.

AFFIRMED.

---

**2.** The statements that Vizcarra refers to are found in Officer Payan's testimony which was properly allowed into evidence by the district court as discussed above.