**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Partap SINGH, Lekh Raj Khanna, and
Ashok Kumar Khanna,
Defendants–Appellants.**

No. 89–2541.

United States Court of Appeals,
Fifth Circuit.

Jan. 18, 1991.

Roland E. Dahlin, II, Federal Public Defender, H. Michael Sokolow, Asst. Federal Public Defender, Houston, Tex., for Singh.

Charles W. Medlin, Robert Fickman, Houston, Tex., for Lekh Raj Khanna.

Alexander Bunin, Edward A. Mallet, Houston, Tex., for Ashok Khanna.

Paula Offenhauser, Asst. U.S. Atty., Henry K. Oncken, U.S. Atty., Houston, Tex., for the U.S.

Before POLITZ, WILLIAMS, and SMITH, Circuit Judges.

POLITZ, Circuit Judge:

Partap Singh, Lekh Raj Khanna (hereinafter Lekh), and Ashok Kumar Khanna (hereinafter Ashok) were convicted by a jury of conspiracy to import in excess of one kilogram of heroin and of aiding and abetting in its importation and delivery.[1] All timely appeal assigning various errors. Finding no reversible error we affirm all convictions.

### Background

The record fairly establishes the following scenario. Danny Thakur, a convicted drug offender and confidential informant for the Drug Enforcement Administration, had several conversations, some of which

---

**1.** Count One: 21 U.S.C. §§ 846, 952, and 960(b)(1); Count Two: 21 U.S.C. §§ 960(a)(1) and 952(a), 18 U.S.C. § 2; Count Three: 21 U.S.C. § 841(a)(1) and (b)(1)(A).

were recorded, relative to a proposed heroin transaction with a man named Singh from Nepal. During the conversations Thakur was cautioned repeatedly about the dangers of talking on the telephone and was instructed to refer to the heroin as "carpet." Working with the DEA Thakur arranged for Singh to visit the United States. Upon his arrival in New York Singh was met by Thakur and his companion, known only as Jackie, and was accompanied by them to Houston. Undercover agents Solpietro and Turner met the trio at the Houston airport and drove them to an apartment which was to serve as their abode for the remainder of the relevant period.

Thereafter there were several discussions between Singh, Thakur, and the agents, some of which were videotaped, about the packaging, shipment, and payment for the heroin. After three weeks Singh advised the agents that he would return to India to oversee the shipment. Singh gave the agents the bill of lading for the shipment as he was preparing to depart on his return flight. At that point he was arrested.

Shortly after Singh's arrest Thakur received a telephone call from Lekh who identified himself as Lal. Lekh claimed ownership of the shipment, advising that Singh was his employee. During the course of several conversations Thakur was admonished to take care in the use of the telephone and not to use the same line Singh had used. The heroin was now referred to as "watches." Thakur ultimately was furnished with the data on the flight and invoice number of the shipment of heroin, which arrived addressed as Lekh had been instructed by agent Solpietro.

Immediately after arrival of the contraband Solpietro informed Lekh that he would have to come to the United States to establish bank accounts for the transfer of the money. A few days later Lekh and his brother Ashok appeared at Thakur's residence. Lekh told Thakur that Ashok was his "right hand man" and was fully informed about the heroin transaction. During this initial meeting several watches were placed on the table. The following day Lekh, Ashok, Thakur, Jackie, and the two DEA agents met. The meeting was videotaped. During the first 45 minutes the conversation was entirely in the Urdhu language. Then, after Thakur and Jackie left, the discussion was conducted in English. Throughout, the heroin was referred to as "watches" while the method for transferring the money was arranged.

The following day a meeting was held at a bank with a DEA agent posing as a bank official. Lekh and Ashok participated in the conversation. A joint account was opened; Lekh signed the signature card and furnished a depositary and account number to which the money was to be wired; Lekh and Ashok were then arrested.

Singh and Lekh argued that Thakur was not a credible witness and that the transaction was a legitimate business deal. Singh added that the purpose of the videotaped meeting was to assist in his return to India. Ashok testified that he had no knowledge of the purpose of Lekh's visit to Houston and that he accompanied his brother only as a translator.

The jury returned guilty verdicts on all counts and Singh, Lekh, and Ashok were sentenced, respectively, to imprisonment for 302, 293, and 211 months, plus a supervised release term of five years. All timely appealed.

### Analysis

#### 1. *Identity of Jackie.*

Much of the appeal focuses on the identity of Thakur's companion Jackie. Appellants asked that she be identified and produced as a witness ostensibly possessed of exculpatory evidence as to all defendants because she lived with Thakur and was present during many of the incidents attested to. The government declined to disclose her identity.

■ The Supreme Court addressed the issue of the disclosure of the identity of a confidential informant in *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). In applying the teach-

ings of Roviaro we have developed a tripartite test. The trial court must determine and balance: (1) the level of the informant's involvement in the alleged activity, (2) the helpfulness of disclosure to the asserted defense, and (3) the government's interest in nondisclosure. *United States v. Diaz*, 655 F.2d 580 (5th Cir.1981), *cert. denied*, 455 U.S. 910, 102 S.Ct. 1257, 71 L.Ed.2d 448 (1982); *United States v. Toro*, 840 F.2d 1221 (5th Cir.1988); *United States v. Vizcarra–Porras*, 889 F.2d 1435 (5th Cir. 1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 2192, 109 L.Ed.2d 520 (1990).

■ In reviewing trial court rulings in this area we apply the clearly erroneous standard to fact findings and abuse of discretion standard to conclusions reached. *Vizcarra–Porras.*

■ In the case at bar the trial court made its determination after an *in camera* hearing at which both Thakur and Jackie testified. The trial court found that Jackie did not understand the Urdhu language in which much of the discussion was conducted, did not participate in the investigation, and was not present for those discussions conducted in English about which the witnesses testified. The court further found that there was speculation but no adequate showing that Jackie's testimony would aid in the defense's claim of entrapment. Finally, the trial court found and concluded that the government's interest in preventing disclosure was substantial, based on threats to Jackie's life. Our review of the record leads inexorably to the conclusion that the *in camera* hearing was appropriate if not indeed mandated, and that the district court made no clearly erroneous findings of fact nor did it abuse its discretion in applying the Roviaro and progeny test.[2]

The more troublesome component of the question of Jackie's identity involves the confrontation clause of the sixth amendment. We accordingly must address that constitutionally significant issue. The appellants contend that their right to confront witnesses was abrogated when they were excluded from the courtroom when Thakur was testifying. At that time Thakur was being questioned, as he had been in the *in camera* session, concerning the extent of Jackie's knowledge about and involvement in the investigation. At that point the courtroom was cleared of all but the judge, essential court personnel, and counsel.

A breach of the confrontation clause is a very serious matter, one to be approached carefully by both trial and appellate courts. A defendant has a constitutionally granted "right to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings." *Faretta v. California*, 422 U.S. 806, 819 n. 15, 95 S.Ct. 2525, 2533 n. 15, 45 L.Ed.2d 562, 572 n. 15 (1975); *United States v. Stratton*, 649 F.2d 1066 (5th Cir.1981). Very limited exceptions are recognized.

As noted in *Roviaro* and the decisions which follow its lead, before ordering the identification of a confidential informant the trial court must perform a balancing. An informed decision may require the government to disclose information which would be detrimental to the confidential informant if made public. This falls in the category of the cliché that a rung bell cannot be unrung. We considered this conundrum in *United States v. De Los Santos*, 819 F.2d 94 (5th Cir.1987), wherein we sought to protect both the confrontation rights of the defendant and the vital interests of the government and confidential informant. We therein adopted the approach of our Ninth Circuit brethren in declaring

> we hold that the responsibility for striking the proper balance in each case rests with the trial judge. In striking that balance the trial judge, in the exercise of his discretion, can conduct an *in camera*

**2.** Singh claims that his right to appellate review is transgressed because the record does not contain the transcript of the *in camera* hearing. That transcript is now contained in the appellate record, thus mooting that issue. He also complains that his right to an appeal is crippled because he was denied access to that transcript. Our finding that the *in camera* hearing was appropriate eviscerates that contention. To furnish a transcript, in this setting, would defeat the very purpose of the *in camera* procedure.

hearing to which the defense counsel, but not the defendant is admitted. The defense counsel could then be permitted to participate in the *in camera* proceeding and to cross-examine the *in camera* witness or witnesses.... [T]he district court can and should, when appropriate, place defense counsel under enforceable orders against unwarranted disclosure of the evidence that he has heard.

819 F.2d at 97 (quoting *United States v. Anderson*, 509 F.2d 724, 730 (9th Cir.), *cert. denied*, 420 U.S. 910, 95 S.Ct. 831, 42 L.Ed.2d 840 (1975)).

During the *in camera* hearing evidence was presented regarding attempts on Jackie's life by her former husband and his family. The government and Jackie feared that if her whereabouts became public knowledge her life would be endangered. The questioning of Thakur out of the presence of the defendants was, in essence, a repeat and extension of the earlier *in camera* review. The questioning dealt with the materiality of Jackie's testimony, a matter of law to be determined by the court.

■ Considering the compelling interest of the government in protecting Jackie's life, that the issue involved resolution of a matter of law, that Jackie's testimony was deemed not material, and that defense counsel were present to examine Thakur, we conclude that the defendant's temporary absence in this instance did not frustrate the fairness of the proceeding. Accordingly, we hold that this temporary removal of the defendants from the courtroom did not violate the confrontation clause. In so ruling we emphasize the fact-specific basis for recognizing this very narrow exception to the sixth amendment confrontation guarantee.

### 2. *Sufficiency of the evidence.*

Singh and Ashok challenge the sufficiency of the evidence, precipitating our determination whether, after viewing the evidence presented and all of the inferences reasonably drawn therefrom in the light most favorable to the prosecution any rational trier of fact could have found the essential elements beyond a reasonable doubt. *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). We must resolve all inferences and credibility assessments in favor of the jury verdict. *United States v. Rodriguez–Mireles*, 896 F.2d 890 (5th Cir.1990); *United States v. Medina*, 887 F.2d 528 (5th Cir.1989).

■ The essential elements of a conspiracy charge include the existence of a conspiracy, guilty knowledge and voluntary participation. *United States v. Kaufman*, 858 F.2d 994 (5th Cir.1988). No overt act in furtherance of the conspiracy need be proven and the agreement need not be shown by direct evidence; it may be inferred from the circumstances. *United States v. Medina*. That one played only a minor role in a conspiracy is not grounds for a reversal. Further, although mere presence is insufficient to support a conviction, presence is a relevant factor which the jury properly may consider. *United States v. Lechuga*, 888 F.2d 1472 (5th Cir.1989). To prove the offense of aiding and abetting, the government must establish that the defendant became associated in the criminal venture, participated in, and in some way acted to further it. *Medina*, 887 at 532. Typically, the same evidence will support both a conspiracy and an aiding and abetting conviction.

■ We find sufficient evidence to support the convictions of all defendants. The evidence against Singh and Lekh overwhelms. Although lesser in quantity and quality, the evidence against Ashok is sufficient to support his conviction. Accepting, as we must, all reasonable inferences and credibility calls in favor of the government, a rational trier-of-fact could have found all of the essential elements of each count proven beyond a reasonable doubt. Ashok accompanied his brother Lekh to Houston. Lekh identified Ashok as his right hand man and said that Ashok knew all about the heroin smuggling. Ashok was present during and participated in several discussions concerning the quantity of heroin and the method of payment. The use of the terms "kilos" and "heroin" was cautioned against in Ashok's presence. Ashok personally warned Thakur to be

careful because they were engaged in a very dangerous business. Finally, Ashok participated in the meeting at the bank where the transfer of funds was arranged.

### 3. *Authentication of the tapes.*

 Singh alleges that the trial court abused its discretion in allowing the introduction of tape recordings of the March 1988 conversations between Singh and Thakur, asserting that the tapes were not authenticated properly. In *United States v. Lance,* 853 F.2d 1177 (5th Cir.1988), a case involving tape recordings of a conspirator made by a government informant, we held that conclusive proof of authenticity is not a prerequisite to the admissibility of disputed evidence. Rule 901 of the Federal Rules of Evidence provides that authentication is "satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." At trial Thakur, who is fluent in Urdhu, identified the tapes as recordings of Urdhu conversations between Singh and himself. Although the DEA equipment had malfunctioned at other times it worked properly during these conversations. The transcriptions made available to the jury were made and checked by Thakur, who testified that the only deletions related to conversations about other investigations. Based on this testimony the trial court admitted the tapes. We find no abuse of discretion in that ruling.

Finally, we find no merit in appellants' assignments of error relating to proof of the conspiracy, instruction on conspiracy, limitation on cross-examination, and rejection of a voir dire challenge for cause.

The convictions are AFFIRMED.