UNITED STATES of America,
Plaintiff–Appellee,

v.

Adan CHAVEZ, Arturo Campos, and
Ray Garcia, Defendants–
Appellants.

No. 90–2706.

United States Court of Appeals,
Fifth Circuit.

Nov. 8, 1991.

David Garcia, Edinburg, Tex., for Chavez.

David R. Bires, Houston, Tex., for Campos.

Heriberto Medrano, Harlingen, Tex., for Ray Garcia.

Peggy M. Ronca, Paula C. Offenhauser, Sam Nuchia, Asst. U.S. Attys., Ronald G. Woods, U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before THORNBERRY, DAVIS and WIENER, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

A jury convicted appellants Adan Chavez, Arturo Campos, and Ray Garcia of conspiring to possess with intent to distribute cocaine and marijuana and aiding and abetting possession with intent to distribute cocaine and marijuana. In this appeal, all three appellants challenge the sufficiency of the evidence to support their convictions. Our review of the record reveals that the evidence is sufficient. In addition, appellant Campos objects to the district court's upward adjustment of his offense level in determining his sentence under the Federal Sentencing Guidelines. We also find no merit to this contention.

I.

In December 1989, Joe Jackson, a confidential informant, informed the Drug Enforcement Administration (DEA) that a large shipment of cocaine and marijuana was being shipped from the Rio Grande Valley to Houston, Texas. The DEA began surveillance of Jackson, who soon met with Augustin and Francisco Flores to discuss plans for the shipment. The three agreed that Jackson would drive a truck loaded with the narcotics to Houston and that the Flores brothers would follow in a yellow Oldsmobile. The DEA rented a tractor-trailer rig for Jackson the following day. That evening DEA agents observed Jackson and Francisco Flores in the truck and Augustin Flores in the yellow Oldsmobile driving around McAllen and Edinburg, Texas.

Before proceeding to Houston, Jackson and the Floreses detached the cab of the truck from the trailer. Augustin Flores then took the cab from Jackson and drove it to a mobile home owned by appellant Chavez in Edinburg. The drugs were loaded in the sleeper section of the cab. Augustin Flores returned with the cab, and it was reattached to the trailer. Jackson then continued toward Houston in the truck with the Flores brothers nearby in the Oldsmobile. The truck and the Oldsmobile arrived in the Houston area about 5:30 a.m. on December 15. Later that morning, Jackson and the Floreses ate breakfast and checked in a Budget Inn.

Several hours later, the three men left the Budget Inn and, after driving several "maneuvers" to avoid surveillance, drove to Freeport, Texas, where Augustin Flores made several phone calls from a pay phone. The two vehicles then returned to the Budget Inn. When they arrived at the hotel, Jackson got into the Oldsmobile with the Floreses, and they drove to a Motel 6. At the Motel 6, DEA agents observed Augustin Flores enter room 227 and return to the car about ten minutes later. Jackson and the Flores brothers drove back to the Budget Inn but left a short time later, around 6:30 p.m., in the truck and Oldsmobile.

This time the two vehicles began to drive into Houston but became separated in the heavy traffic. Jackson pulled the truck to the side of the road to wait for the Floreses to rejoin him. While he was waiting, a DEA agent got into the cab and saw the cocaine and marijuana in the cab's sleeper compartment. When the Oldsmobile finally returned, the tractor-trailer rig followed it to TNR Discount Auto Repair (TNR), arriving a little before nine o'clock. The repair yard was closed for the night, but someone opened the gate. The Floreses parked the Oldsmobile in front of the TNR office, and Jackson drove the truck into the yard.

The DEA agents, who had kept the tractor-trailer rig under surveillance through-

out its journey, next saw a blue Ford pickup truck leave the compound and park in an adjacent parking lot. A short time later, the gate opened again, and the tractor-trailer rig backed out of the compound. At that time, the DEA agents received their order to move in and arrest everyone inside TNR. Once inside the compound, the agents discovered another blue pickup truck. The agents found duffel bags and onion bags filled with packages of cocaine in the truck's bed and a pile of bags on the ground behind the truck.

When the agents entered the compound, they also saw a number of people, including appellants Chavez, Campos, and Garcia, standing near the pile of bags. Chavez and Campos were standing on one side of the pile of bags near the back of the truck, and Garcia was on the other side. All three men were facing the bags and the truck and had their backs to the gate through which the agents entered the compound. Both Chavez and Campos had bags in their hands but dropped the bags when the agents announced their presence. The DEA examined the bags and determined that they contained approximately 336 kilograms of cocaine. The pickup truck outside of the compound contained 550 pounds of marijuana.

The agents arrested Chavez, Campos, Garcia, and several other men who were in the vicinity. After his arrest, Chavez told a DEA agent that he was in Houston to buy cars and that he was staying at the Motel 6 with Campos and Garcia. Independently, Campos also told the agent that he was staying at the Motel 6 with Chavez and Garcia and that he was in town to buy transmissions. A motel registration card introduced at trial showed that Chavez checked in room 227 of the Motel 6 on December 15, expected to check out on December 16, and was staying with two other adults.

Following the arrest, the agents seized two pieces of paper from Augustin Flores. One piece of paper contained Chavez's name and phone number and the other the phone number of the Motel 6 with the number "227." The agents also found a small baggie of cocaine in Chavez's jacket. The agents' search of Campos uncovered a key for room 227 of the Motel 6 and a card with Augustin Flores's name, telephone number, and some numerical computations.

Chavez, Campos, and Garcia were later tried and convicted on three counts. The two substantive counts were aiding and abetting possession with intent to distribute more than five grams of cocaine (Count 2) and more than 100 grams of marijuana (Count 3). The jury also convicted the three of conspiracy to possess with intent to distribute cocaine and marijuana. (Count 1). The judge sentenced Chavez and Campos to 360 months in prison, plus five years supervised release, and a special assessment. Garcia received 360 months in prison, ten years of supervised release, and a special assessment. All three filed timely appeals.

## II.

■ Chavez, Campos, and Garcia first challenge the sufficiency of the evidence to support their convictions. In reviewing these challenges, we must determine whether, viewing the evidence and the inferences that may be drawn from it in the light most favorable to the verdict, a rational jury could have found the essential elements of the offenses beyond a reasonable doubt. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Bell*, 678 F.2d 547, 549 (5th Cir.1982) (en banc), *aff'd*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983). Further, as this Court has explained:

> [To sustain a conviction] [i]t is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt. A jury is free to choose among reasonable constructions of the evidence.

*Bell*, 678 F.2d at 549.

■ To prove a drug conspiracy, the government must demonstrate that a conspiracy existed and that the defendant

knew of and voluntarily participated in the conspiracy. *United States v. Singh*, 922 F.2d 1169, 1173 (5th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 2066, 114 L.Ed.2d 471 (1991); *United States v. Rodriguez–Mireles*, 896 F.2d 890, 892 (5th Cir.1990). The government need not establish the agreement by direct evidence; the jury may infer such an agreement from the circumstances. *Singh*, 922 F.2d at 1173. Mere presence at the crime scene is insufficient to support an inference of participation in the conspiracy. Nevertheless, the jury may consider presence and association, along with other evidence, in finding conspiratorial activity by the defendant. *Id.; United States v. Lechuga*, 888 F.2d 1472, 1476–77 (5th Cir.1989); *United States v. Magee*, 821 F.2d 234, 239 (5th Cir.1987).

◼ Our review of the record persuades us that a reasonable jury could have found beyond a reasonable doubt that a conspiracy existed and that the appellants knew about and voluntarily participated in it.

The Flores brothers met with the informant Jackson on December 13 to discuss shipping drugs from the Rio Grande Valley to Houston. Augustin Flores drove the truck that Jackson obtained from the DEA to Chavez's home and loaded the drugs into the cab's sleeper compartment.

Once in Houston, the three proceeded to a Motel 6 where Augustin Flores visited room 227, which was registered to appellant Chavez. The motel registration card indicates that Chavez checked in the room that day along with two other adults and planned to stay until the next day. Chavez's and Campos's post-arrest statements linked all three appellants to room 227, and DEA agents seized the room key from Campos after his arrest.

Augustin Flores's visit to room 227 was not the only evidence, however, of an association between the Flores brothers and the appellants. After making the arrests, the DEA agents discovered physical evidence that linked the occupants of room 227 to the Floreses. The agents found a business card on Campos that had Augustin Flores's name and telephone number on it. The agents also seized two pieces of paper from

Augustin Flores. One piece of paper contained Chavez's name and telephone number and the other the phone number of the Motel 6 along with the number "227."

Further, shortly after the visit to room 227, Jackson and the Flores brothers drove the drugs to TNR. When DEA agents stormed TNR, they found Chavez, Campos, and Garcia standing next to a pile of bags containing cocaine. Chavez and Campos had bags in their hands and appeared, to the agents, to be loading the bags into the adjacent pickup truck. Garcia was not holding a bag then, but one agent testified that Garcia was close enough to the pile to pick up a bag and place it in the truck.

The appellants argue that the evidence merely establishes that they may have been present in the yard with the drugs or associated with the Floreses. The jury, however, was entitled to consider the unlikelihood that the owner of such a large quantity of narcotics would allow anyone unassociated with the conspiracy to be present during the unloading. The jury could reasonably have inferred that the appellants knew what was in the bags and were helping load them into the pickup truck. In addition, the jury was entitled to reject Chavez's and Campos's testimony that each was at TNR in Houston to buy cars or car parts. Instead, the jury could have credited the evidence that the appellants visited TNR after business hours and there met not with TNR employees but with people who had just brought drugs into Houston.

The essential elements of possession with the intent to distribute narcotics consist of (1) possession, (2) knowledge, and (3) an intent to distribute the drugs. *United States v. Price*, 869 F.2d 801, 804 (5th Cir.1989). However, a jury may infer a defendant's intent to distribute contraband from the possession of a large amount of contraband. See *United States v. Hernandez–Palacios*, 838 F.2d 1346, 1349 (5th Cir. 1988). The government proceeded on the theory that the appellants aided and abetted in the possession with intent to distribute the drugs. Proof of actual physical possession is not necessary. The govern-

ment was required to establish that the appellants became associated with, participated in, and in some way acted to further the possession and distribution of the drugs. *Singh*, 922 F.2d at 1173. This Court has recognized that "[t]ypically, the same evidence will support both a conspiracy and an aiding and abetting conviction." *Id.*

The same evidence that Chavez, Campos, and Garcia knew of and participated in the conspiracy supports their convictions for aiding and abetting in the possession and distribution of the drugs. The evidence linking the appellants to the Flores brothers demonstrates that they willfully associated with a criminal venture and shared the Floreses' criminal intent. Chavez's connection to the venture is the strongest of all because the drugs were picked up at his home. Chavez, Campos, and Garcia all assisted in the success of the venture, however, by meeting the Floreses and the truck at TNR and helping to unload it.

Based on the circumstantial evidence discussed above, a reasonable jury could have found that the appellants knew about the narcotics shipment and went to TNR to help unload the oddly shaped bags filled with marijuana and cocaine. The evidence is sufficient to support the appellants' convictions on the substantive counts.

### III.

Campos challenges the district court's determination that he was an "organizer" under § 3B1.1 of the Federal Sentencing Guidelines. The district court predicated a four-level increase in Campos's offense level on this finding.

Campos's Presentence Investigation Report (PSI) included statements by Augustin Flores that Campos recruited the Floreses into the trafficking scheme. According to the PSI, Campos invited Flores to his residence to discuss the details of moving the drugs. . Additionally, Campos told Flores to pick up the drugs at Chavez's home, met Flores there the night the drugs were transported to Houston, and paid Flores $25,000 in cash. In Houston, Flores met with Campos at the Motel 6 where Campos gave him a map to TNR and instructed him to be there later that evening. Finally, Flores told DEA agents in his debriefing that Campos also told him where he was to deliver the drugs after leaving TNR.

Augustin Flores made these statements to DEA agents and did not testify at Campos's trial or sentencing hearing. On appeal, Campos contends that this information is hearsay and lacks sufficient indicia of reliability to support the court's finding that he was an organizer. Campos also argues that the court denied him due process because he had no opportunity to confront and cross-examine Augustin Flores.

■ This Court will "uphold the district court's sentence so long as it results from a correct application of the guidelines to the factual findings which are not clearly erroneous." *United States v. Sarasti*, 869 F.2d 805, 806 (5th Cir.1989). We review Campos's challenge to the district court's factual finding that Campos was an organizer for clear error. See *United States v. Alfaro*, 919 F.2d 962, 966 (5th Cir.1990).

■ As Campos admits, in sentencing, the district court may consider any relevant evidence "without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." United States Sentencing Guidelines § 6A1.3(a).

■ We are not persuaded that the information relied upon by the district court in making this finding was unreliable or "materially untrue." See *Alfaro*, 919 F.2d at 964. Despite Campos's protestations to the district court's finding, he submitted no evidence to rebut the information in the PSI. Instead, Campos's objection to the PSI consists merely of unsworn assertions by his attorney that the PSI is incorrect. Unsworn assertions, however, do not bear sufficient indicia of reliability to be considered by the trial court in making its factual findings. United States Sentencing Guidelines § 6A1.3 commentary.

Additionally, the DEA agents found Flores's statements in other respects reli-

able and consistent with what they knew to be true. Flores's statements about Campos's activities, on which the court relied to find him an organizer, were consistent with these known facts. Thus, the record supports the district court's acceptance of Flores's statements. The court did not err in finding that Campos was an organizer. We therefore decline to disturb the court's computation of Campos's offense level.

In summary, we conclude that the evidence is sufficient to support the appellants' convictions. Additionally, the district court's determination that Campos was an "organizer" is not clearly erroneous, and its corresponding upward adjustment in his offense level is proper. Therefore, we AFFIRM the appellants' convictions and sentences.

AFFIRMED.