UNITED STATES of America,
Plaintiff–Appellee,

v.

Grady A. THOMAS, Defendant–
Appellant.

No. 91–5639.

United States Court of Appeals,
Fourth Circuit.

Argued Aug. 2, 1991.

Decided Dec. 19, 1991.

As Amended Jan. 7, 1992.

Edward Jennings, Winston–Salem, N.C., argued, for defendant-appellant.

Michael Francis Joseph, Asst. U.S. Atty., Greensboro, N.C., argued (Robert H. Edmunds, Jr., U.S. Atty., on brief), for plaintiff-appellee.

Before RUSSELL and WIDENER, Circuit Judges, and HAWKINS, Chief District Judge for the District of South Carolina, sitting by designation.

## OPINION

WIDENER, Circuit Judge:

■ Grady A. Thomas appeals from his conviction on sixteen counts of violating 18 U.S.C. § 152. Thomas contends that the trial court erred in denying his Sixth Amendment right to confrontation by excluding Thomas and his attorney from the *in camera* testimony of an attorney, Jack Westall, who had formerly represented and advised Thomas. In addition, he asserts that the trial court committed reversible error by incorrectly instructing the jury. Finally, Thomas argues that there was not substantial evidence to support a verdict of guilty under 18 U.S.C. § 152. We reverse on the confrontation issue and do not reach the issue of the sufficiency of the evidence. The instruction complained of was sufficient.[1]

Grady Thomas was appointed receiver of Zimmerman's Department Store, Inc. of Salisbury, North Carolina by order of the Rowan County, North Carolina, Superior Court on February 18, 1988. Thomas, as receiver, retained an attorney, Jack Westall, to advise and represent him. As receiver, Thomas liquidated Zimmerman's inventory.

On September 8, 1988, Zimmerman's filed a voluntary Chapter 7 petition in the U.S. Bankruptcy Court for the Middle District of North Carolina. Bruce Magers, the trustee in bankruptcy for Zimmerman's, requested that Thomas turn over any funds on hand and an accounting for the receivership. Thomas submitted a report on October 30, 1988, that indicated that, as receiver, he had obtained approximately $500,-000, and had disbursed those funds so that the funds that Magers, as trustee, collected from the Zimmerman's receivership were roughly $8,700 that he obtained when he closed the receivership account at a local bank. The government charges that Thomas made unauthorized disbursements to himself. Thomas never tried to hide those disbursements, but claims they were advanced payments of expenses and commissions.

On May 30, 1990, Thomas was indicted on nineteen counts of transferring and concealing money in contemplation of bankruptcy, in violation of 18 U.S.C. § 152. After pleading not guilty at arraignment, Thomas, pursuant to a plea agreement, then agreed to plead guilty to two counts of the indictment. At the hearing on the guilty plea, the government offered the testimony of Thomas J. Brereton, an investigator appointed by the bankruptcy court, to provide the factual basis for the plea. After cross-examination by Thomas' attorney, the district court stated that "it seems to me that there is some question with regard to whether or not Mr. Thomas says he knew or did not know that this would be for the purpose of defeating the bankruptcy court" and struck the guilty plea because there was not a factual basis for it. At the subsequent trial, the jury returned verdicts of not guilty on counts 1 through 3 and guilty on counts 4 through 19. Thomas was sentenced to a term of imprisonment of fourteen months and three years of supervised release. In addition he was ordered to make restitution in the amount of $63,502 and pay a special assessment of $50 per count for each count of which he was found guilty.

Of considerable consequence in the case was the testimony presented concerning what Jack Westall, Thomas' attorney, told

---

1. The instruction complained of charged the jury that the government had to prove beyond a reasonable doubt that Thomas was an agent of Zimmerman's Department Store; that he was contemplating bankruptcy proceedings by or against Zimmerman's; that while contemplating such a bankruptcy proceeding, he transferred money or property belonging to Zimmerman's; that such transfer was done knowingly and fraudulently, and that, as used in the instructions, fraudulently meant "to act willfully and with the intent to deceive, normally for the purpose of causing financial loss to another or bringing about financial gain for oneself." Willfully was further defined. We think the instruction adequately explains the offense charged under 18 U.S.C. § 152.

Thomas prior to the filing of the bankruptcy petition. The district court, *in camera,* examined Westall to determine if Thomas had waived the attorney-client privilege upon a claimed disclosure to Brereton of the contents of his communications with Westall. In ruling on the objection to Brereton's testimony, the district court believed it was necessary to hear from Westall what conversations Westall had had with Thomas. The court offered the attorneys two alternatives:

> *"The Court:* We can do that in two ways: We can go back to my chambers and do that with Miss Nelson or if you-all don't want to make Miss Nelson [the court reporter] move, you-all can absent yourselves from the courtroom while we undertake that here. I'll leave that up to the parties.
>
> *Mr. Jennings* [Thomas' attorney]: [W]hat do you say about it?
>
> *Mr. Jennings:* Your Honor, we'll step out.
>
> *Mr. Robertson* [the Assistant U.S. Attorney]: Yes, Your Honor. Be glad to, Your Honor."

The government's attorney and Thomas' attorney, as well as Thomas, left the room.

After the *in camera* proceeding, the district court ruled that an attorney-client relationship existed but that Thomas had waived the privilege. Although the court did not state the discrete reason, it was apparently because it believed Thomas had disclosed to Brereton the substance of Westall's statements to him. The government then called Westall as a witness to testify before the jury and Thomas' attorney objected to Westall's testimony.[2]

We are of opinion that the procedure utilized by the district court was reversible error. The court's ruling that the attorney-client privilege was waived was based on its *in camera* examination of Westall. Both Thomas and his attorney were excluded from this hearing and therefore had no

opportunity either to personally confront or to cross-examine Westall at this important stage of the trial. Indeed, Thomas did not receive a transcript of the *in camera* hearing until after the trial had concluded.

The Sixth Amendment to the United States Constitution provides that the "accused shall enjoy the right ... to be confronted with the witnesses against him." A primary interest secured by the confrontation clause is the right of cross-examination. *Douglas v. Alabama,* 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934 (1965). A complete denial of cross-examination constitutes constitutional error of the first magnitude. *Brookhart v. Janis,* 384 U.S. 1, 3, 86 S.Ct. 1245, 1246, 16 L.Ed.2d 314 (1966).

A defendant has a constitutional "right to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings." *Faretta v. California,* 422 U.S. 806, 819 n. 15, 95 S.Ct. 2525, 2533 n. 15, 45 L.Ed.2d 562 (1975). "Very limited exceptions are recognized." *United States v. Singh,* 922 F.2d 1169, 1172 (5th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 2066, 114 L.Ed.2d 471 (1991). In *Singh,* the Fifth Circuit held it was not reversible error to exclude a defendant from a hearing because the government had a compelling interest in protecting a prospective witness's life. However, the defendant's attorney was present to examine the witness during the *in camera* proceeding. The Fifth Circuit emphasized "the fact specific basis for recognizing this very narrow exception to the sixth amendment confrontation guarantee." 922 F.2d at 1173.

In the instant case, Thomas' attorney was not only excluded and thus completely denied the right to cross-examine Westall on the issue of attorney-client privilege at the *in camera* proceeding, Thomas himself was excluded from the courtroom. There was no interest, compelling or other-

---

**2.** Thomas had previously objected to Brereton's testimony as to Westall's advice to Thomas, then again objected, this time to the court's ruling that the attorney-client privilege had been waived. These objections were sufficient to pre-serve for appeal the propriety of the *in camera* proceeding, since the testimony given *in camera* was the basis for the court's ruling that the attorney-client privilege had been waived.

wise, to justify excluding either the defendant or his attorney from the courtroom. Both Thomas and his attorney should have been present when Westall was testifying before the court. We are aware of no decision approving the type of procedure adopted by the district court, and are of opinion it was a violation of Thomas' Sixth Amendment confrontation rights.

Because the district court committed constitutional error, we must reverse unless the error is harmless beyond a reasonable doubt. See *Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986). Who can say but had Thomas been present and his attorney allowed to cross-examine Westall at the *in camera* hearing, he might have convinced the district court that the attorney-client privilege had not been waived. Had that been the case, most, if not all, of Westall's testimony would have been inadmissible.

The government, to illustrate, was required to prove that Thomas contemplated bankruptcy when he transferred funds from the receivership estate. See 18 U.S.C. § 152. Westall testified, before the jury, that approximately two months after Thomas was appointed as receiver, he advised Thomas "that at some point in time it appeared to us likely that the matter would have to be resolved by bankruptcy." The government has taken the position throughout that this testimony from Thomas' former attorney was relevant to the government's case in proving that Thomas contemplated bankruptcy. Therefore, even without further analysis, we cannot say that the error was harmless beyond a reasonable doubt.

Because we reverse on the confrontation clause issue, we do not reach the issue of the sufficiency of the evidence, for even if the evidence was sufficient, a new trial is required.[3]

The judgment of the district court is

REVERSED AND THE CASE REMANDED FOR A NEW TRIAL.

---

**3.** It would involve too much speculation for us to rule on the sufficiency of the evidence absent the erroneous holding with respect to the *in camera* proceeding. See *United States v.* *Swaim,* 642 F.2d 726, 729 (4th Cir.1981); *United States v. Mandel,* 591 F.2d 1347, 1372–74 (4th Cir.1979), *overruled en banc on other grounds,* 602 F.2d 653 (4th Cir.1979).