United States Court of Appeals
Fifth Circuit

**F I L E D**

**February 8, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————

No. 05-30952

———————————

UNITED STATES OF AMERICA

      Plaintiff - Appellee

v.

STEPHANIE R JONES

      Defendant - Appellant

———————————

Appeal from the United States District Court
for the Western District of Louisiana, Lake Charles
USDC No. 2:04-CR-20038

———————————

Before KING, GARZA, and PRADO, Circuit Judges.

PER CURIAM:[*]

    Defendant-appellant Stephanie R. Jones appeals her conviction for one count of theft of government property in violation of 18 U.S.C. § 641. Her sole argument on appeal is that the evidence presented at trial is insufficient to support the conviction. For the following reasons, we AFFIRM.

### I. FACTUAL AND PROCEDURAL BACKGROUND

    Beginning in 1981, defendant-appellant Stephanie R. Jones

---

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

worked as a civilian librarian for the Department of the Army. She served as the head librarian at Fort Polk from 1991 until 2003. Jones oversaw ten employees and was responsible for both the main library facility and a large warehouse.

As part of her employment duties, Jones had a government credit card to make work-related purchases. Jones used the credit card to purchase DVDs, books, and other miscellaneous items such as aluminum foil and an extension ladder. Jones could purchase computers and related equipment for the library pursuant to a contract with Progressive Technology Federal Systems, Inc. Jones was responsible for the accountability of all items purchased, including documenting the items on the appropriate property books, hand receipts, or vouchers.

The library collected cash from patrons who had lost or damaged books. Per Jones's instructions, library employees accepted cash only and either handed the cash directly to Jones or placed it in an envelope and slid it under her office door.

The Army decided to outsource about seven-hundred civilian jobs at Fort Polk, including the operation of the library. To prepare for the transition, the Army instituted Operation Slim Warrior, a drive to eliminate all unnecessary property at Fort Polk.

In 2003, issues arose concerning possible items that may have been missing from the library and the disposition of the cash collected by library employees. A library employee

2

anonymously reported a missing ladder and possible missing computer equipment.

An Army investigator interviewed employees to determine the status of the possible missing items and cash. During his investigation, he learned that although library employees collected cash, the Defense Financial Accounting Service ("DFAS") had no record of Jones making any deposits.

Sometime in 2003, the private contractors slated to take over library operations spent two days visiting the library to familiarize themselves with its operations. Jones did not report to work either day and stated that she was taking care of her hospitalized mother. On the first day, the contractors asked library employees about the cash-collection methods. Jones learned of this questioning that evening when she called an employee at home to inquire how the visit went. The next day all but one receipt had been ripped out of the receipt book. A library employee photocopied the remaining receipt showing a $25 payment. The following morning the receipt book and sole remaining receipt were also gone.

A large extension ladder was also reported as missing. Employees noted seeing the ladder in the two-week time period following its purchase. Then one Monday morning, the employees noticed the ladder had disappeared. Jones told employees that the ladder had been moved to the warehouse, yet when an investigator asked to see the ladder, Jones stated that she did

3

not have a key at that time. Later, when the investigator visited the warehouse, the ladder was not there. One employee testified that the Friday before the Monday the ladder went missing, Jones had asked him to take her to pick up a fifteen-passenger van. Another employee testified that Jones painted her house around the time the ladder disappeared.

The investigator executed a search warrant for thirty-three items, including DVDs and an extension ladder, that Jones had purchased on her government credit card account but that could not be found in the library. The search warrant also listed computers and computer equipment that the investigator suspected were missing.

Nineteen of the items listed on the warrant were found in Jones's house. The investigator also seized dozens of other items he believed to be government property, including library books, trash bags, paper towels, file folders, four Day-Runner organizers, a large amount of aluminum foil, batteries, a twenty-eight-foot extension ladder, VHS tapes, audio tapes, insect repellant, a three hole punch, shelving units, a floor rug, and CDs. Some items were labeled as government property. The investigator did not find any computers or computer equipment.[1]

---

[1] Officials also searched the residence of Jones's daughter, a student at the University of Michigan, but found no computers or other items. Much of Jones's argument focuses on the factual discrepancies surrounding the missing computer equipment. We do not address the evidence surrounding the missing computers because other evidence presented at trial is

4

Jones testified at trial regarding her reasons for possessing the property. She stated that she purchased some of the items, including the ladder and some of the DVDs, with her own funds. She testified that she took home the books, videos, and DVDs that belonged to the library so that she could review them as part of her job, and that she had not yet been able to introduce the DVDs to the library's catalogue before she was barred from the library. Jones further explained that the other items, such as the office and craft supplies, were being used pursuant to her duties with the Federal Librarians Round Table and American Library Association (two professional organizations in which she actively participated), and that the aluminum foil, carpet, easel, trash bags, and other supplies were used for children's activities at library events.

Jones was charged in a one-count information with theft of government property pursuant to 18 U.S.C. § 641. A jury found her guilty. Jones now appeals, arguing that the evidence is insufficient to show that she intended to convert any government property to her own use.

## II. Sufficiency of the Evidence

A. **Standard of Review**

This court reviews a challenge to the sufficiency of the

---

sufficient to support the conviction.

evidence by "'viewing the evidence and the inferences that may be drawn from it in the light most favorable to the verdict' and determining whether 'a rational jury could have found the essential elements of the offense[] beyond a reasonable doubt.'" United States v. Valdez, 453 F.3d 252, 256 (5th Cir. 2006), cert. denied, 127 S. Ct. 456 (2006) (quoting United States v. Pruneda-Gonzalez, 953 F.2d 190, 193 (5th Cir. 1992)). The jury alone weighs the evidence and makes credibility determinations. United States v. Jaramillo, 42 F.3d 920, 923 (5th Cir. 1995). The evidence need not "exclude every rational hypothesis of innocence or be wholly inconsistent with every conclusion except guilt" so long as "a reasonable trier of fact could find the evidence establishes guilt beyond a reasonable doubt." Pruneda-Gonzalez, 953 F.2d at 193 (citing United States v. Chavez, 947 F.2d 742, 744 (5th Cir. 1991)).

**B.  Discussion**

To establish theft of government property under § 641, the government must establish the following elements: (1) that the property belonged the United States government; (2) that the defendant stole the property; and (3) that the defendant did so knowing the property was not hers and with the intent to deprive the owner of the use or benefit of the property. United States v. Aguilar, 967 F.2d 111, 112 (5th Cir. 1992). The jury instructions defined the term "steal" as the wrongful taking of

6

money or property belonging to another with the intent to deprive the owner of its use or benefit either temporarily or permanently. The intent required in § 641 "is the intent to appropriate [the government property] to a use inconsistent with the owner's rights and benefits." See Ailsworth v. United States, 448 F.2d 439, 442 (9th Cir. 1971). Intent is a fact question for the jury and is often inferred from circumstantial evidence. See United States v. Strickland, 509 F.2d 273, 276 (5th Cir. 1975).

When viewing the evidence in the light most favorable to the verdict, the jury could have found beyond a reasonable doubt that Jones committed theft of government property. Many of the items found in her home were either labeled as government property or matched the invoices from her government credit card. Jones's argument focuses on whether the evidence showed she had an intent to steal. The jury could have inferred that Jones wrongfully took the property with the intent to deprive the government of the use or benefit of the property. We consider three portions of the evidence from which the jury could have reached that conclusion: the testimony regarding the cash collection, the extension ladder, and the collection materials.

Over a five-year period, library employees collected fees in cash from patrons who lost or damaged books. Multiple employees testified that they either handed Jones directly the cash they had received or placed it in an envelope and slid the envelope

7

under Jones's door. Employees issued the patrons a receipt for payment. The investigator testified that DFAS records indicated that Jones had not once deposited cash. The jurors could have inferred that Jones took the money for her own use and intended to deprive the government of it. The jurors may also have inferred that after hours Jones used her keys to destroy the receipts evidencing the cash collection.

Upon execution of the search warrant, the investigator found at Jones's home a twenty-eight-foot extension ladder, identical to the one purchased by Jones with the government credit card. Jones explained that she had used her own funds to purchase the ladder found in her home and that she had later purchased an identical ladder for the library because she was so pleased with the model. The jury was free to reject that explanation and infer from the evidence that Jones rented the large van to move the ladder home and use it to paint her house. See Strickland, 509 F.2d at 276 (holding that criminal intent may be inferred from the defendant's false explanation of the possession of stolen items). Additionally, the jury may have doubted that the ladder was ever purchased for the library in the first place. Numerous individuals testified that there was no use for the ladder at the library. And although Jones stated that she purchased the ladder for the air-quality-control inspectors, evidence indicated that that department probably had its own ladders.

Certainly Jones, as a librarian, could permissibly have taken books, DVDs, and tapes home to review and catalogue them without intending to deprive the government of their use or benefit. But the jury could have inferred that Jones's possession of these materials at home was not pursuant to her employment. Jones took the materials home without checking them out to herself through the library's system, as one witness testified employees were required to do. Also, Jones purchased many DVDs over an extended period of time without setting up a DVD collection in the library or cataloguing the DVDs, and she testified that she purchased for herself many of the same titles she purchased for the library, although the library's copy could not be found. From this evidence the jury could have inferred that Jones took these items with the requisite intent to deprive and that her possession was not merely an incident to her employment duties. Cf. Ray v. United States, 229 A.2d 161, 162 (D.C. App. 1967) (holding that the evidence was insufficient to show intent to steal if the evidence showed only possession of the materials as a normal incident of employment).

The jury could have made numerous inferences to conclude that Jones had the requisite intent to steal and that she wrongfully deprived the government of the use or benefit of its property, including cash, supplies, equipment, and parts of the library's collection. We hold that the evidence presented at trial is sufficient to support a conviction for theft of

9

government property in violation of 18 U.S.C. § 641.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM.